**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Ted NORRIS, M.D.,
Defendant-Appellant.**

**No. 84–2602.**

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1986.

Charles T. Conway, court appointed, San Antonio, Tex., for defendant-appellant.

Helen M. Eversberg, U.S. Atty., Sidney Powell, Steven C. Hilbig, Asst. U.S. Attys., San Antonio, Tex., Thomas E. Booth, Atty., Appellate Section Criminal Div. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GARWOOD, PATRICK E. HIGGINBOTHAM and W. EUGENE DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this appeal, Dr. Norris challenges his conviction on ten counts of dispensing non-narcotic and narcotic Schedule II controlled substances in violation of 21 U.S.C. § 841(a)(1)[1]. We affirm.

## I.

Dr. Norris was a practicing physician in a health clinic owned by him in San Antonio, Texas. Between August and October 1982, the Texas state board of medical examiners assigned three investigators to attend Norris' clinic as patients.

The investigators testified that upon arrival they were asked to fill out personal data forms and were then directed to a room in which Dr. Norris addressed them along with a number of other patients. In his address, Dr. Norris lectured the patients on his theories of exercise, consciousness, and the reasons for prescribing drugs. Dr. Norris then called out each patient's name and asked him which drug he desired. Afterward, Dr. Norris met briefly with each investigator, checked his pulse and chest, and then gave him a prescription for the drug he had requested. The investigators testified that Dr. Norris never inquired about their medical history or their reasons for wanting the prescribed drug. Norris never instructed them on the use of the drug.

On November 17, 1982, Drug Enforcement Administration agents searched Dr. Norris' office and seized his records. On April 10, 1984, Dr. Norris was indicted on

---

1. Section 841 provides that:
   (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

   (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.
   21 U.S.C.A. § 841 (West 1981).

fifteen counts of illegally dispensing Schedule II controlled substances in violation of 21 U.S.C. § 841(a)(1). Following a trial, a jury found him not guilty on five of the counts and guilty on ten counts. The court sentenced Norris to a five-year prison term to be followed by a five-year parole term on each of the ten counts, and permitted the sentences on the ten counts to be served concurrently.

Norris contends that the district court committed the following errors: (1) the jury was instructed to use an objective standard rather than a subjective standard to determine whether he acted in the usual course of a professional practice; (2) his constitutional right to a public trial was denied; (3) his motion for appointment of a new standby counsel should have been granted; (4) his sixth amendment right to a speedy trial was violated; (5) the court's order restricting the parties from making public comment on the trial resulted in prejudicial press coverage of his trial; and (6) the court failed to grant a mistrial sua sponte when evidence of extraneous offenses was admitted.

## II.

### A.

To convict Dr. Norris of violating 21 U.S.C. § 841(a)(1), the government was required to prove "(1) that he distributed or dispensed a controlled substance, (2) that he acted knowingly and intentionally, and (3) that he did so other than for a legitimate medical purpose and in the usual course of his professional practice." *U.S. v. Rosen*, 582 F.2d 1032, 1033 (5th Cir. 1978). Although the third element is not expressly required by § 841, pertinent regulations provide that a controlled substance can be dispensed by a prescription "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a)(1985).

Relying on the phrase, "usual course of his professional practice," contained in the regulations, Norris argues that the jury should have been instructed that a professional practice is to be judged subjectively, not objectively as the court instructed.[2] Norris asserts that the use of the word "his" in the regulation requires the government to prove that he prescribed the drugs for a purpose that was contrary to Norris' own standards of reasonable medical practice. One person's treatment methods do not alone constitute a medical practice. The district court therefore correctly rejected Norris' proposed charge premised on a theory that a standard medical practice may be based on an entirely subjective standard.

In *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), the Court, in affirming the conviction of a physician under 21 U.S.C. 841, implicitly approved the following instruction:

[You must find] beyond a reasonable doubt that a physician, who knowingly or intentionally, did dispense or distribute [methadone] by prescription, did so other than in good faith for detoxification in the usual course of a professional practice and in accordance with a standard of medical practice generally recognized and accepted in the United States.

423 U.S. at 139, 96 S.Ct. at 343–44. In this case, the district court carefully modelled its charge after the Moore charge and properly directed the jury to consider: 1) Whether Dr. Norris prescribed the drugs for what he subjectively considered a legitimate medical purpose and 2) from an objective standpoint whether the drugs were dispensed in the usual course of a professional practice. The charge was a correct statement of the law.

### B.

Dr. Norris complains that several important proceedings were held in chambers

---

2. The district court charged the jury that:
A controlled substance is prescribed by a physician in the usual course of a professional practice, and, therefore, lawfully, if the substance is prescribed by him in good faith, medically treating a patient in accordance with a standard of medical practice generally recognized and accepted in the United States.

and at private bench conferences in violation of his sixth amendment right to a public trial.[3] The meetings with Norris and counsel that were conducted in chambers concerned problems raised by various jurors,[4] evidentiary questions, proposed jury charges, and the court's ex parte interview of Dr. Norris regarding witnesses he wished to subpoena for his defense. Several bench conferences were held outside the hearing of the jury on various procedural and evidentiary questions. Norris made no contemporaneous objection to any of the chambers conferences. He only objected to a single bench conference in which the government explained a chart it intended to offer to give Norris an opportunity to object and the court an opportunity to consider its admissibility. Therefore, we need not consider his objection to the remaining non-public chambers and bench conferences. *Rovinsky v. McKaskle,* 722 F.2d 197, 201 (5th Cir.1984).

The Supreme Court recently considered the reach of the sixth amendment right to a public trial in *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). The petitioners in *Waller* were indicted for violating the Georgia Racketeer Influenced and Corrupt Organizations Act and for commercial gambling and communicating gambling information. Prior to trial, they moved to suppress certain evidence and the state moved to close the suppression hearing. Over the defendants' objection, the court granted the motion and the court excluded the public from the courtroom for seven days while it conducted a hearing on the motion to suppress. The issue before the Supreme Court was whether the sixth amendment right to public trial extended to the suppression hearing.

The Court began by noting that public trials are important to our criminal justice system because they encourage witnesses to come forward, discourage perjury, insure that the judge and the prosecutor act responsibly, and lend credibility to criminal trials by allowing the public to see that an accused is dealt with fairly. The Court held that these objectives are frustrated if hearings to suppress wrongfully-seized evidence are closed. This conclusion was predicated on the critical importance and trial-like nature of the suppression hearing.

Frequently, the outcome of the suppression hearing determines the outcome of the trial. The accused in a suppression hearing also routinely attacks the conduct of the police and the prosecutor, which should be subject to public scrutiny. "In addition, a suppression hearing often resembles a bench trial: witnesses are sworn and testify, and of course counsel argue their positions. The outcome frequently depends on a resolution of factual matters." *Id,* at ——, 104 S.Ct. at 2216.

The concerns expressed by *Waller* underlying the right to a public trial are not implicated in the present case. The private aspects of Norris' trial that he complains of consist entirely of the arguments of counsel and rulings by the court on technical legal questions. Non-public exchanges between counsel and the court on such technical legal issues and routine administrative problems do not hinder the objectives which the Court in *Waller* observed were fostered by public trials. Unlike the trial of a suppression motion, such exchanges ordinarily relate to the application of legal principles to admitted or assumed facts so that no fact finding function is implicated. A routine evidentiary ruling is rarely determinative of the accused's guilt or innocence. Also, such evidentiary rulings ordinarily pose no threat of judicial, prosecutorial or public abuse

---

**3.** The sixth amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...."

**4.** One juror informed the judge that she had inadvertently seen a television report about the case. Another juror reported that he had known one of the witnesses eighteen years before the trial. A third juror advised the judge in a note that his brother had suddenly died. Additionally, the jury, by note, requested clarification from the judge on a portion of the court's charge.

that a public trial is designed to protect against.

Acceptance of Norris' argument would require the district court to unnecessarily extend and disrupt the trial by parading the jury in and out of the courtroom when the court is required to discuss technical legal issues and routine administrative or housekeeping problems. We reject appellant's proposal for such drastic changes in these traditional, common sense trial practices.[5]

## C.

The district court appointed Mr. Charles Conway as counsel for Dr. Norris. Shortly before the trial Norris sought permission to cross-examine the government's experts and have Mr. Conway conduct all other aspects of the case. The trial court denied this request. Dr. Norris then moved to proceed *pro se;* this motion was granted but the trial court designated Mr. Conway as standby counsel. After the government rested its case, Dr. Norris moved to dismiss Mr. Conway as standby counsel on grounds that tension had developed between them. This motion was denied on the ground that it would disrupt the trial. Dr. Norris then moved for appointment of a substitute standby counsel which was denied for the same reason.

■ Dr. Norris argues first that the court erred in refusing to allow him to cross-examine the government's expert witnesses and have his attorney conduct the balance of the trial. He argues further that after appointing Mr. Conway as standby counsel the district court erred in refusing to replace him with a substitute standby counsel.

Norris' first contention is without merit; a defendant does not have the right to a hybrid representation, in which he conducts a portion of the trial and counsel conducts the balance. *United States v. Daniels,* 572 F.2d 535 (5th Cir.1978); *United States v. Bowdach,* 561 F.2d 1160 (5th Cir.1977).

Whether an accused in a particular case should be permitted to examine some but not all the witnesses must be left to the sound discretion of the district court. The trial judge is in a position to evaluate whether the accused is competent to cross-examine a witness, whether the trial will be unduly extended if this is permitted, and whether a conflict will likely develop between the accused and counsel in front of the jury. In the present case, the district court did not abuse its discretion in denying this request by Dr. Norris.

■ Similarly, the district court did not abuse its discretion in denying Norris' motion to appoint a new standby attorney at the close of the government's case. Norris' objection to Mr. Conway's services was a non-specific one that tension had developed between them. If a conflict had developed it was not apparent to the district court, and there was no reason to believe Norris' working relationship with new counsel would be smoother. The Sixth Amendment does not guarantee Dr. Norris the right to counsel—standby or otherwise—of his choice, *United States v. Magee,* 741 F.2d 93 (5th Cir.1984). The district court has broad discretion to deny last minute requests for a change of counsel that would delay the trial. *United States v. Silva,* 611 F.2d 78 (5th Cir.1980).

## D.

■ Dr. Norris complains that his sixth amendment right to a speedy trial was violated because the government delayed commencement of the prosecution for one and a half years after his records were seized. This right only attaches upon indictment or arrest, *U.S. v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and is not implicated by a pre-indictment delay such as the one that occurred in this case. *See also U.S. v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). Dr. Norris' contention that he was

**5.** *See Richmond Newspapers, Inc. v. Virgina,* 448 U.S. 555, 598 n. 23, 100 S.Ct. 2814, 2839 n. 23, 65 L.Ed.2d 973 (1982) (Brennan, J., concurring)

(first amendment right to a public trial cannot be used to intrude into bench or chambers conferences).

"arrested" by the seizure of his records is without merit. The district court properly refused to dismiss Dr. Norris' indictment on this ground.

### E.

 Due to local publicity, the district court issued an order requiring all parties and witnesses to refrain from making public statements concerning the trial. Dr. Norris alleges that this order denied him a fair trial "because the public formed an opinion without the benefit of all the facts." Even if this is true, Dr. Norris' guilt was not determined by the public and Norris has failed to articulate actual prejudice from this order. *See United States v. Thompson,* 615 F.2d 329 (5th Cir.1980).

### F.

 Dr. Norris argues that the trial judge should have *sua sponte* ordered a mistrial because of prejudicial testimony the jury was allowed to hear. The testimony Norris complains of was elicited from Dr. Harold Moise who testified about an instance when several people obtained marijuana out of Dr. Norris' car and another instance when he and Dr. Norris were arrested for possessing marijuana.

During the trial, Dr. Norris objected to this testimony and moved to strike it from the record. The court granted the motion and instructed the jury to disregard the testimony. Dr. Norris informed the court that the limiting instruction was satisfactory. He now argues that this testimony was not easily erased from the juror's minds and that the district court erred in failing to order a mistrial *sua sponte.*

Because Dr. Norris expressed satisfaction with the court's limiting instruction, our review is limited to a determination of whether the district court committed plain error. *See* Fed.R.Civ.P. 52(b). The record discloses that Dr. Norris testified several times that he, on more than one occasion, took different mind altering substances, in-

cluding marijuana.[6] Given these admissions, Dr. Norris does not explain, and we fail to see, how Dr. Moise's testimony that Dr. Norris had marijuana in his possession caused him the severe prejudice required for a mistrial. The district court certainly did not commit plain error. Because we find no error, the conviction is

AFFIRMED.

---

6. Dr. Norris specifically admitted to having tried the following substances: . alcohol, marijuana, heroin, peyote, psilocybin, speed, Quaa-ludes, LSD, Demoral, Percodan, Dilaudid, Dexa-drine, Preludin, Tuinal, Seconal Sodium, Tussio-nex, and Valium.