United States Court of Appeals,

Fifth Circuit.

Nos. 92-1622, 92-1638

Summary Calendars.

In the Matter of HIPP, INC., Debtor.

David Oles, Appellant.

Oct. 21, 1993.

Appeals from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, DAVIS and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

Convicted of criminal contempt under 18 U.S.C. § 401(3) for violating an order of the bankruptcy court, David Oles appeals. We find no error and affirm.

*Background*

In April 1984, Hipp, Inc. filed a Chapter 11 bankruptcy and Thomas Griffith was appointed trustee. On October 2, 1987 Griffith filed an adversary proceeding against Phoenix Grain, Oles, and Redonda Carter,[1] seeking damages and the turnover of certain property to the Hipp estate. In November 1987, Griffith petitioned the bankruptcy court for injunctive relief against Oles and others, specifically seeking an order directing them to withdraw *lis pendens* filed against the Hipp estate so that certain property could be sold. On November 9, 1987 the bankruptcy court held a hearing on the matter; Oles and his counsel were present. The court orally granted an injunction directing Oles to remove the *lis pendens* he had filed and to take no action which would interfere with the sale of the property. That order was reduced to writing and entered on December 15, 1987.

Not only did Oles fail to withdraw the *lis pendens* previously filed, he filed several additional *lis pendens* against property of the Hipp bankruptcy estate. The trustee filed a motion to avoid Oles' *lis pendens* and for contempt. Oles was convicted of contempt following a hearing in the bankruptcy

---

[1] Shortly before Hipp filed its bankruptcy petition Oles and Carter, through Phoenix Grain, leased several Hipp facilities, including five grain elevators. Oles was in personal bankruptcy when the adversary proceeding was filed.

court and *de novo* review in the district court. We reversed and remanded to the district court, holding that the bankruptcy court lacked jurisdiction to conduct the criminal contempt proceedings.[2] Upon remand, a criminal contempt proceeding, prosecuted by the United States Attorney, was commenced in the district court. Convicted of criminal contempt and sentenced to six months imprisonment, Oles timely appeals.

*Analysis*

*Sufficiency of the Evidence*

A criminal contempt conviction for disobedience of a court order requires proof beyond a reasonable doubt of: "(1) a reasonably specific order, (2) violation of the order, and (3) the willful intent to violate the order."[3] Oles contends that the order at issue was not reasonably specific.[4] "Determining whether an order is specific requires a factual inquiry into the reasonableness of the order's specificity, given the context in which it was issued."[5]

Oles first alleges that the bankruptcy court's order directing him to remove the *lis pendens* was unclear. The order provided:

> David Oles, individually, is ordered to file withdrawals of the two notices of *lis pendens* which he filed on—or which he filed and are dated October 22, 1987. And those withdrawals are to be filed in all places where that notice of *lis pendens* was filed. And he is to file withdrawals of any and all other notices of *lis pendens* with respect to the property under consideration.

Oles asserts that he did not know whether he was to withdraw the *lis pendens* filed on October 22, 1987 or those dated October 22, 1987. The record reflects that as of the date of the hearing Oles had

---

[2]*See In re Hipp,* 895 F.2d 1503 (5th Cir.1990).

[3]*Cooper v. Texaco, Inc.,* 961 F.2d 71, 72 n. 3 (5th Cir.1992) (citing *United States v. Burstyn,* 878 F.2d 1322 (11th Cir.1989)).

[4]Oles also raises several challenges based upon alleged inconsistencies between the bankruptcy court's oral order of November 9, 1987 and its written order entered on December 15, 1987. The district court based the criminal contempt conviction upon violations of the oral order; thus we only consider whether the oral order was sufficiently specific. *See In re Lamarre,* 494 F.2d 753 (6th Cir.1974) (order entered in open court in presence of defendant may be enforced by criminal contempt).

[5]*United States v. Revie,* 834 F.2d 1198, 1201 (5th Cir.1987), *cert. denied,* 487 U.S. 1205, 108 S.Ct. 2845, 101 L.Ed.2d 882 (1988).

two notices of *lis pendens* against Hipp estate property, both of which were dated *and* filed on October 22, 1987. There could be no confusion as to which should have been withdrawn and even if there were any ambiguity it was remedied by the additional directive that Oles withdraw "any and all other notices of *lis pendens* with respect to the property under consideration."[6]

Oles next contends that the court's oral order that he "not take any action of any nature whatsoever to interfere with the [sale] of the Tulia property" did not clearly and unambiguously prohibit him from filing additional *lis pendens*. He points out that it was not until the order was reduced to writing that the bankruptcy court specifically stated that he file no additional *lis pendens*.[7]

As the government underscores, the one type of interference expressly prohibited was the filing of additional *lis pendens*. The bankruptcy court made abundantly clear before entering the order that the filing of the *lis pendens* notices already had interfered with the trustee's ability to sell the property:

> With respect to the notice of *lis pendens,* Judge Felsenthal held a hearing on the [sale] of this property free and clear of liens and interest. Phoenix Grain was fully aware of that, actually participated in it. This, of course, includes the lease claims of Phoenix Grain.
>
> Judge Felsenthal established an appeal bond. Rather than post the bond the parties set out to scuttle the [sale] by filing adversary proceedings and notices of *lis pendens.*
>
> *There can be no doubt that these actions were designed to circumvent the appeal bond and to frustrate the [sale].* [Emphasis added.]

Thus, Oles' argument that the order provided him with insufficient notice that he should file no further notices of *lis pendens* rings hollow. We conclude that Oles knowingly violated the bankruptcy court's order.

---

[6]Oles tries to manufacture ambiguity by pointing to the fact that the order "refers to what was previously referred to as two *lis pendens,* in the singular"—the order directs that the withdrawals be filed where "*that* notice" was filed. This argument is disingenuous at best.

[7]The written order provided in pertinent part:

> ... Mr. David Oles, [and the others involved with Phoenix Grain] ... are hereby immediately, jointly and severally, ordered not to take any action of any nature whatsoever to interfere with the sale of the Tulia property by Mr. Griffith, the Trustee. The declaratory judgment action in Adv. No. 287-2092 may proceed, subject to later consideration of the Trustee's motion to dismiss, but no *lis pendens* are to be filed regarding that adversary, nor any other action which would delay the sale, without prior permission of this Court.

Oles also argues that the bankruptcy court's order was unlawful because the court had no personal or subject matter jurisdiction over him.[8] He makes the bald assertion that (1) there was no evidence he had filed a proof of claim or had acted to convert property of the estate to his own use, and (2) he was in personal bankruptcy and the automatic stay in his bankruptcy rendered the November 9, 1987 bankruptcy court order in the Hipp proceedings void.[9]

These arguments lack merit. The bankruptcy court had jurisdiction over Oles pursuant to the adversary proceeding brought by the trustee. This was a core proceeding regarding interests in property of the estate.[10] It is too firmly established to admit of debate that an injunction issued by a court having subject matter and personal jurisdiction must be obeyed, regardless of the ultimate validity of the order.[11] There is no suggestion that Oles appeared only specially at the November 9, 1987 hearing or that he ever invoked any jurisdictional defense in the adversary proceeding. That Oles may have thought that the order was unlawful did not somehow authorize him to disregard it.[12]

---

[8]Oles also contends that the district court was without jurisdiction to conduct the criminal contempt trial because upon remand the new show-cause order was docketed and tried with the same docket number as the initial appeal from the proceeding conducted by the bankruptcy court. He contends that the trial in the district court was merely a continuation of the initial invalid bankruptcy court proceeding and, therefore, is void. We refuse to attach such jurisdictional significance to the docket number under which the matter was prosecuted. We noted in the earlier appeal that even when a matter tried to the bankruptcy court is given true *de novo* review, "i.e., a further trial proceeding at which the determination will be based solely on the evidence freshly presented in open court at that further proceeding, in contrast to review under Rule 9033(d) which may be solely on the record and without any additional hearing or evidence—the fact that the initial proceeding lacked a constitutionally competent adjudicator may nonetheless be fatal." *In re Hipp,* 895 F.2d at 1519. The proceeding in the district court was not simply a *de novo* review of the earlier bankruptcy court proceeding. Whereas the bankruptcy court proceeding and appeal therefrom was tried on the basis of the trustee's motion for contempt, the district court proceeding was based upon a prosecution filed by the United States Attorney. The two proceedings are distinct and independent despite the docket numbering adopted.

[9]*See* 11 U.S.C. § 362(a).

[10]28 U.S.C. § 157(b)(1), (2).

[11]*United States v. Dickinson,* 465 F.2d 496 (5th Cir.1972); *see United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

[12]Also, assuming *arguendo* that the automatic stay from Oles' personal bankruptcy applied, it would render the November 9, 1987 order voidable, not void. *Sikes v. Global Marine, Inc.,* 881 F.2d 176, 178-79 (5th Cir.1989). Oles cites no authority for the proposition that the mere existence of the automatic stay creates a jurisdictional defect in a suit against the debtor.

*Sixth Amendment Claim*

The court appointed William McKinney to represent Oles in the contempt proceeding. Oles contends that he developed a substantial conflict with McKinney and that his sixth amendment right to counsel was violated when the district court refused to dismiss McKinney and appoint substitute counsel. When the court declined to appoint new counsel Oles decided to proceed *pro se.* He claims, however, that his decision to do so was not voluntary because it was made only when the district court presented him with the choice of McKinney or no counsel.

If Oles validly asserted his right of self-representation[13] there can be no sixth amendment infringement. A valid assertion of the right to self-representation is made only if the defendant has knowingly and intelligently waived the right to counsel, and made a request to proceed *pro se* which is clear and unequivocal.[14] Oles unequivocally stated his position thusly: "[I]f [McKinney] is not allowed to withdraw, I am going to have to exercise my right of self-representation." To determine whether the right to counsel has been knowingly and voluntarily waived, the court must evaluate the circumstances of each case as well as the background of the defendant.[15]

The first circumstance we must consider is whether the district court erred in denying McKinney's request to withdraw. We find that it did not. Oles contends that McKinney's motion to withdraw and motion for continuance demonstrated that an irreconcilable conflict had arisen. He notes that he and counsel had a substantial disagreement regarding how the case should be defended and contends that in the motions McKinney ridiculed him and published confidential communications. Review of the motions demonstrates that McKinney did not reveal the substance of any disagreements with Oles, but only that he "refused to participate in actions of [Oles] which counsel regards as unsubstantiated, illegal, frivolous and unethical."

After conducting a hearing on the motions the district court determined that "there is ... nothing to suggest to me that any other counsel would be better able to do what he wants done than

---

[13]*See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

[14]*Faretta; Brown v. Wainwright,* 665 F.2d 607 (5th Cir.1982) (*en banc* ).

[15]*Wiggins v. Procunier,* 753 F.2d 1318 (5th Cir.1985).

Mr. McKinney is, or that appointment of another lawyer would make any difference at all in this proceeding." We have previously defined the contours of the right to appointed counsel as follows:

> A defendant is entitled to counsel capable of rendering competent, meaningful assistance in the preparation and trial of the pending charges, including appropriate evaluation and advice with reference to a plea of guilty. A defendant is not entitled to an attorney who agrees with the defendant's personal view of the prevailing law or the equities of the prosecutor's case. A defendant is entitled to an attorney who will consider the defendant's views and seek to accommodate all reasonable requests with respect to trial preparation and tactics. A defendant is entitled to appointment of an attorney with whom he can communicate reasonably, but has no right to an attorney who will docilely do as he is told. Every defendant is entitled to the assistance of counsel dedicated to the proposition, and capable of assuring that, the prosecution's case shall be presented in conformity with the Constitution, rules of evidence and all other controlling rules and practices. No defendant has a right to more.[16]

Whether the defendant is likely to enjoy a better relationship with a new attorney is a valid consideration for the district court in making the decision on substitute counsel.[17] The district court properly found that McKinney's representation fell well within the scope of that to which Oles was entitled. We have noted that "persistent, unreasonable demand for dismissal of counsel and appointment of new counsel," may amount to a knowing and voluntary waiver of the right to counsel.[18] The district court does not have to wait until the defendant makes numerous unreasonable demands for new counsel before determining that he waives the right to counsel.[19]

We have identified several factors that the district court should consider in making its determination that the defendant has knowingly and voluntarily waived his right to counsel:

> The court must consider the defendant's age and education, and other background, experience, and conduct. The court must ensure that the waiver is not the result of coercion

---

[16]*United States v. Moore,* 706 F.2d 538, 540 (5th Cir.), *cert. denied,* 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983).

[17]*See Lowenfield v. Phelps,* 817 F.2d 285 (5th Cir.1987), *aff'd,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *United States v. Norris,* 780 F.2d 1207, 1211 (5th Cir.1986) (denial of motion for substitute standby counsel proper where defendant made non-specific allegation of conflict between himself and current standby counsel and "there was no reason to believe [defendant's] working relationship would be smoother"); *see also United States v. Magee,* 741 F.2d 93 (5th Cir.1984) (sixth amendment does not provide unqualified right to counsel of the defendant's choice).

[18]*Moore,* 706 F.2d at 540.

[19]*See Moore,* 706 F.2d at 540 (where district court required defendant to proceed *pro se* after dismissing his third court-appointed counsel, we were "convinced beyond peradventure that the district court went beyond any reasonable requirement for appointment of counsel").

or mistreatment of the defendant, and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving.[20]

The record reflects the following colloquy between the court and Oles:

> Court:  I will consider, Mr. Oles, your request to represent yourself.  And I want to talk to you about that.  And that is just simply to say that I think it is very difficult, even for a very knowledgeable layman as yourself with a lot of experience in filing pleadings in various matters, to represent himself adequately.  And I think that you would benefit by having counsel.  What is your education, sir?
>
> Oles:  It is—I have got a college degree in finance....  Bachelor degree.
>
> Court:  You have a right to represent yourself, and I am satisfied with—looking at the documents you have filed, that you are competent to do so, if you wish to do so.  I still say that even a lawyer is better off with someone else representing him....
>
>  I haven't determined whether I am going to require Mr. McKinney to remain or not as stand-by counsel if you choose to represent yourself.  But I—what I am telling you is, I think it is very difficult for you to do, even though you have a familiarity with the courts that most people don't have and have had experience filing *pro se* matters and have had a great deal of experience filing *pro se* matters.
>
>  What I am saying is, my advice to you is—if that is relevant, is that it is difficult for you to do it as well as it would be to have Mr. McKinney to represent you.  However, you have a constitutional right to represent yourself if you wish to do so, and it is just the ball is in your court.  You can—the choice is yours....
>
> Oles:  The position that I am taking is that I am exercising my right to self-representation, and along with that, orally move that Mr. McKinney stay on as stand-by counsel....
>
> Court:  ... [L]et me say first that if you do—and I know you know this already because of your previous experience—but if you do represent yourself, you are going to have to follow the same rules that a lawyer would follow.  You understand that?
>
> Oles:  Yes, Ma'am, and I attempted to do that in every case.
>
> Court:  ... All right.  You have a right to represent yourself, and ... at least for today, I am going to keep Mr. McKinney here ...
>
>  You are representing yourself now at this point.

Oles had already been through contempt proceedings in the bankruptcy court, so obviously he was aware of the nature and the likely consequences of the proceedings.  The record reflects adequate

---

[20]*McQueen v. Blackburn,* 755 F.2d 1174, 1177 (5th Cir.), *cert. denied,* 474 U.S. 852, 106 S.Ct. 152, 88 L.Ed.2d 125 (1985).

consideration of the *McQueen* factors.[21]  We find no sixth amendment violation because Oles validly waived his sixth amendment right to counsel and invoked the right of self-representation.

*Recusal of District Judge*

Oles contends that the district judge erred in refusing to recuse herself pursuant to 28 U.S.C. § 455.[22]  A motion to disqualify is committed to the sound discretion of the judge and her decision will only be reversed if there has been an abuse of that discretion.[23]

As grounds for recusal, Oles asserts:  (1) the district court previously affirmed his conviction for the same offense following the contempt proceedings in the bankruptcy court;  (2) Oles had initiated a claim under the Federal Tort Claims Act against the district judge and the bankruptcy judge;  (3) in July 1987, the district court received a letter from the bankruptcy court, and the letter was not made available to Oles;  and (4) the court, *sua sponte,* entered an order barring Oles from certain portions of the courthouse.[24]

The district judge did not err in declining to recuse.  Disqualification is appropriate if a reasonable person, knowing all the relevant circumstances, would harbor doubts about the judge's

---

[21]Oles also contends that the district court should have conducted an additional hearing to determine whether he was competent to waive his right to counsel because the district court knew that Oles sometimes suffered from epileptic seizures and took medication to control them.  Oles presents no evidence, however, that epilepsy, or his medication, in any way impairs mental competency and it would be inappropriate for the district court to make such an assumption.  In addition, the district court found his competence amply demonstrated by the numerous *pro se* motions he filed.

[22]28 U.S.C. § 455(a) provides:  "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

[23]*United States v. Wade,* 931 F.2d 300 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 247, 116 L.Ed.2d 202 (1991).

[24]Oles also points to several factors related to the court's decision that he proceed *pro se.* Having found that there was no violation of his sixth amendment rights in this regard, the court's actions could not support disqualification.  Furthermore, alleged bias warranting the judge's disqualification must be personal and "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."  *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).  Oles alleges only that McKinney's motions for continuance and to withdraw provided the court with prejudicial information.

impartiality.[25]  Adverse rulings against the defendant in the same or a prior judicial proceeding do not render the judge biased.[26]  In addition, a judge is not disqualified merely because a litigant sues or threatens suit.[27]  Judge Robinson determined that Oles' FTCA claim, filed a few days before the scheduled trial date, "was manufactured and submitted in an effort to gain a continuance and/or recusal of this judge."  Our attention has been invited to nothing persuasive which would indicate to the contrary.

The district judge also found that the July 1987 letter from the bankruptcy court could not reasonably support any inference of impartiality.  The letter was a confidential judicial communication which predated by several months the bankruptcy court's November 9 order, violation of which led to the contempt proceedings.  Neither the letter nor the order restricting Oles' access to the courthouse has any relevance to the criminal contempt matters before the district court.  A reasonable person, with knowledge of all the relevant circumstances, could not doubt Judge Robinson's impartiality.

For the foregoing reasons, we AFFIRM.

---

[25]*Chitimacha Tribe of La. v. Harry L. Laws Co.,* 690 F.2d 1157 (5th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).

[26]*United States v. MMR Corp.,* 954 F.2d 1040 (5th Cir.1992);  *United States v. Reeves,* 782 F.2d 1323 (5th Cir.), *cert. denied,* 479 U.S. 837, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986).

[27]*United States v. Grismore,* 564 F.2d 929 (10th Cir.1977), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978).