# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 94-50734
Summary Calendar

ELIZABETH J. AYER,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA, ET AL.,

Defendants-Appellees.

Appeal from the United States District Court
For the Western District of Texas
(A-93-CV-46)

June 19, 1996

Before POLITZ, Chief Judge, JOLLY and DeMOSS, Circuit Judges.

POLITZ, Chief Judge:[*]

Elizabeth J. Ayer appeals the magistrate judge's dismissal of her lawsuit alleging

improper and discriminatory employment termination.  Finding no error, we affirm.

## Background

Ayer was employed at the United States Department of Veteran Affairs' Data

Processing Center in Austin, Texas.  She worked in the Veterans Assistance Discharge

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

System unit entering data into the department's computer system, a job which required typing the entire eight-hour workday. On August 16, 1989, Ayer filed a notice of occupational disease and claim for compensation with the Office of Worker's Compensation Programs. Although this claim was initially rejected, Ayer was diagnosed in May of 1990 with bilateral carpal tunnel syndrome. Based upon this additional evidence, the OWCP accepted Ayer's claim on January 4, 1991.

Ayer was restricted to typing four hours a day and underwent carpal tunnel release surgery on September 19, 1990. On January 24, 1991, Ayer's orthopedic surgeon stated that Ayer should continue typing only half-days. On March 15, 1991, this medical restriction was increased to allow only two hours of typing per day, and on April 19, 1991 this restriction was continued indefinitely.

In April and May of 1991 the VADS unit was reorganized and the work done by Ayer was contracted out to a private company. On June 3, 1991 Ayer was reassigned to the position of Computer Clerk (GS-4). This position required no typing, only the opening and sorting of mail, lifting of computer tapes and printouts, and pushing and pulling carts. On May 24, 1991, Ayer filed a second claim for worker's compensation in which she alleged that she had incurred tendinitis of both shoulders and myofascitis from her new job assignment.

Ayer sought advice from the Personnel Office in July of 1991 about filing for disability retirement. At this time she had two claims for occupational illness pending with the OWCP and she was given both the forms for disability retirement and information about

OWCP's permanent compensability plan. She was also told to provide detailed medical documentation about her disability.

On August 15, 1991, Ayer's superiors were informed that her orthopedic doctor had increased her work restrictions as follows:

(1)     no lifting of items weighing greater than 10 pounds;
(2)     no frequent bending, standing, and sitting;
(3)     only light pushing and pulling, and no climbing; and
(4)     no repetitive use of the left wrist/arm for things such as typing, batching, lifting, etc.

The DPC, the VA Finance Center, and the VA Systems Development Center[1] in Austin had no work at the GS-4 level for which Ayer was qualified, given these permanent restrictions.

Meanwhile, Ayer's second worker's compensation claim had been advancing through the process. On August 22, 1991, the OWCP responded to Ayer's first claim, stating that although she would be compensated for the carpal tunnel syndrome and resulting surgery, the infirmities in her left shoulder did not appear to be work-related. The OWCP advised Ayer to file a new claim for her shoulder condition if she believed it to be work-related. Ayer appealed this decision to the Employee's Compensation Appeals Board.

On September 13, 1991, Ayer was given a written notice of proposed removal by the chief of the operations division at the DPC. This notice explained that the DPC had no jobs which could accommodate Ayer's occupational illness and no jobs which could be restructured in a reasonable manner to provide such accommodation. On October 4, 1991,

---

[1]These were the three VA entities over which the Director of the DPC exercised authority.

the Director of the DPC decided to remove Ayer from her position. This decision was based upon a review of Ayer's personnel folder and related documents by a Supervisory Personnel Management Specialist who concluded that Ayer's qualifications and medical limitations were such that there were no available positions at the DPC which Ayer could fill.

Ayer was suspended from the worksite, with pay, from October 4 until the effective date of her removal on October 16. Ayer submitted an application for disability retirement to the personnel office on October 9, 1991. This application was denied.

On November 20, 1991, Ayer's orthopedic doctor rendered a "maximum medical improvement impairment rating evaluation" which provided, *inter alia*, that "[p]atient may resume working with restrictions of no lifting of greater than 10 pounds using the left upper extremity and no repetitive lifting." On December 30, 1991, Ayer telephoned the assistant personnel officer at the DPC and informed him that she could return to work with the restriction that she could not lift more than 10 pounds. The personnel officer declined Ayer's offer, noting that this information was inconsistent with the doctor's prior "permanent" restrictions and that there were no available positions which could meet those restrictions. The officer did, however, suggest that Ayer submit an application for employment to the DPC.

On December 18, 1991 the OWCP rejected Ayer's second claim for worker's compensation, finding that the evidence of record did not support the proposition that Ayer's shoulder ailments were work-related, and denied three requests for reconsideration of that decision. This decision was later affirmed by the ECAB.

4

On March 30, 1992, the ECAB dismissed Ayer's appeal from the OWCP's resolution of her first worker's compensation claim. The Board concluded that it was without jurisdiction because Ayer was not adversely affected by a final decision of the OWCP denying benefits. Rather, the OWCP had accepted both her claim and her surgical procedure, and had instructed Ayer in a letter dated September 10, 1991 to complete an enclosed form for compensation on account of injury.[2]

Ayer filed a grievance with the Merit Systems Protection Board in January of 1992 alleging discrimination on the basis of her age and handicap. The MSPB rejected her claims, finding instead that she had not been wrongly removed. Ayer, proceeding *pro se* and *in forma pauperis*, filed this lawsuit on February 10, 1993, naming a plethora of defendants.[3] Ayer's complaint alleged that she was subjected to an unsafe and hostile work environment, was discriminated against in employment on the basis of her age and handicap, and was wrongfully removed from her position as a computer clerk due to a failure to accommodate her medical restrictions.

The defendants responded by filing various and sundry motions seeking dismissal of Ayer's claims. The magistrate judge ultimately granted all of these motions and dismissed

[2]The record does not reveal whether Ayer ever filed the correct form (CA-7).

[3]Named as defendants are the United States of America; Jesse Brown, Secretary, Department of Veterans Affairs; Edward J. Derwinski, former Secretary of the Department; the Office of Worker's Compensation Programs; Robert Evans, Director, Department of Veteran's Affairs, DPC; Thomas Melville, Chief Personnel Director, DPC; and Steve Bryant, Matthew Fallon, Eugene Schladweiler, Richard Beyer, Jimmy Jean, and Terry Potter, supervisory and/or personnel officers at the DPC.

all of Ayer's claims on September 29, 1994.[4]  Ayer timely appeals.

Analysis

Ayer asserts that she qualifies for the assistance of counsel under the factors set out by this court to govern such appointments in **Ulmer v. Chancellor**[5] and that therefore the denial of her two motions for the appointment of counsel constitute reversible error.  We are not persuaded; while this case does exhibit a copious record it does not present factual or legal issues of unusual complexity or difficulty.  In short, we conclude that Ayer has failed to posit the sort of "extraordinary circumstances" which might warrant the appointment of counsel in this case.[6]

Ayer next complains that Magistrate Judge Capelle, who entered the judgment dismissing her lawsuit, should have been disqualified from hearing her case under 28 U.S.C. § 455(a) due to his impartiality and bias.  Ayer points specifically to the magistrate judge's claimed testy treatment of her when she testified during a hearing, his denial of her motions

---

[4]This case was decided by a magistrate judge pursuant to 28 U.S.C. § 636(c).

[5] 691 F.2d 209 (5th Cir. 1982).  These factors include the type and complexity of the case, whether the indigent is capable of adequately investigating and presenting the case, and whether disposition of the case will revolve around resolving conflicting testimony so as to require the trial skills of competent counsel. **Id.**

[6]**Cooper v. Sheriff, Lubbock County, Tex.**, 929 F.2d 1078 (5th Cir. 1991).  While Ayer has posited that she has encountered problems in the presentation of her case due to "cognitive difficulty in part as a result of taking Ibuprofin," we see no evidence of these problems in the record excerpts or Ayer's pleadings and briefs of record.  We note further that the record makes it clear that Ayer's sister, a paralegal, was allowed to assist her during hearings in the district court, where the defendants' witnesses were subject to cross-examination which was neither inadequate nor inconsequential.

for continuance and appointment of counsel, and his admitted reliance upon the defendants' briefs for the procedural history of the case. "Disqualification is appropriate if a reasonable person, knowing all the relevant circumstances, would harbor doubts about the judge's impartiality."[7] Our review of the record reveals that the magistrate judge's rulings were correct; his stern treatment of Ayer during the hearing was minor and prompted by her vacillating testimony. We find the procedural history recited in the defendants' brief to be accurate. Accordingly, this assignment of error lacks merit.

We now turn to the substance of the district court's order of dismissal.[8] First, we affirm the district court's dismissal of Ayer's claims against the OWCP. "In enacting the Federal Employees' Compensation Act Congress adopted the principal compromise . . . commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the government."[9] The FECA precludes judicial review

---

[7]**Matter of Hipp, Inc.**, 5 F.3d 109, 116 (5th Cir. 1993).

[8]Ayer has briefed only the appointment of counsel and disqualification issues; under usual circumstances, the law of this circuit demands that all remaining matters be deemed waived on appeal. See **Feldt v. Mentor Corp.**, 61 F.3d 431 (5th Cir. 1995). We will liberally construe Ayer's brief, however, given her status as a *pro se* petitioner and reach the merits of the judgment of dismissal. In addition, as the discussion infra discloses, we, like the district court, read Ayer's complaint as a request for judicial review of the MSPB's adverse determination.

[9]**Lockheed Aircraft Corp. v. United States**, 460 U.S. 190, 194 (1983).

of Ayer's compensation claims.[10]

Reviewing those claims made in Ayer's complaint not previously presented to the MSPB, we need only note that the Labor-Management Agreement governing Ayer's federal civilian employment provides adequate grievance procedures for claimants such as Ayer, and therefore falls under the Civil Service Reform Act of 1978. "[T]he CSRA provides that the procedures established within collective bargaining agreements for the settlement of grievances 'shall be the exclusive procedures for resolving grievances which fall within its coverage.'"[11] Accordingly, all claims not placed before the MSPB properly are dismissed.

Finally, we review the district court's dismissal of Ayer's claims which were heard by the MSPB.[12] The district court, in its review of the MSPB's decision, was limited to an "arbitrary and capricious" or "substantial evidence" standard as to the nondiscrimination claims, but was obligated to give Ayer's discrimination claims *de novo* review.[13] Our review of the record reveals no error in the district court's conclusion that there exists substantial evidence to support the MSPB's determination that Ayer's nondiscrimination claims have

---

[10] 5 U.S.C. § 8128(b). See also **Southwest Maritime, Inc. v. Gizoni**, _____ U.S. _____, 112 S.Ct. 486, 493 (1991) ("FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary's determination of FECA coverage").

[11]**Morales v. Dep't of the Army**, 947 F.2d 766, 769 (5th Cir. 1991), quoting 5 U.S.C. § 7121(a).

[12]Because we agree that the district court's grant of summary judgment was correct in this case, we need not address the alternative bases upon which the dismissal of various claims and defendants were predicated.

[13] 5 U.S.C. § 7703(c); **Williams v. Dep't of the Army**, 715 F.2d 1486 (Fed.Cir. 1983).

no merit.

The district court also found no merit in Ayer's age and handicap discrimination claims.[14]  Ayer offered no evidence that she was able to perform the duties of a computer clerk, that she was replaced by a younger employee, or that her handicap reasonably could be accommodated by the DPC.[15]  Reviewing the record *de novo*, we find summary judgment was proper as to these claims.

AFFIRMED.

---

[14]These claims arise under the Age Discrimination in Employment Act, 29 U.S.C. § 633a, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-16, and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq.

[15]See **Meinecke v. H&R Block of Houston**, 66 F.3d 77 (5th Cir. 1995); **Chiari v. City of League City**, 920 F.2d 311 (5th Cir. 1991).