20-3544-cv
Zheng-Smith v. Nassau Health Care Corp.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of September, two thousand twenty-one.

PRESENT:
JOHN M. WALKER, JR.,
GUIDO CALABRESI,
RAYMOND J. LOHIER, JR.,
*Circuit Judges.*

_____

DR. WEN-TING ZHENG-SMITH,

*Plaintiff-Appellant*,

v.                                                                           20-3544-cv

NASSAU HEALTH CARE
CORPORATION, DBA NUHEALTH
SYSTEM, DR. VICTOR POLITI, DR.
JOHN RIGGS, Individually,

*Defendants-Appellees*,

County of Nassau,

*Defendant*.

_____

FOR PLAINTIFF-APPELLANT:  Wen-Ting Zheng-Smith, pro <u>se</u>, Lutz, FL.

FOR DEFENDANTS-APPELLEES:  Rachel Demarest Gold, Esq., Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara Wolf & Carone, LLP, Lake Success, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

In October 2017 Appellant Dr. Wen-Ting Zheng-Smith was terminated from her employment with Nassau Health Care Corporation ("NHCC") as an obstetrics and gynecology ("OB/GYN") resident at Nassau University Medical Center ("NUMC"). In 2018, through counsel, she sued NHCC, its CEO, Dr. Victor Politi,

and her former supervisor, Dr. John Riggs, asserting race and national origin discrimination, hostile work environment, and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., and 42 U.S.C. § 1981. On September 15, 2020, the District Court granted summary judgment to Defendants on all of her claims. Zheng-Smith, now pro se, appeals. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to affirm.

We review a grant of summary judgment de novo, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." Garcia v. Hartford Police Dep't, 706 F.3d 120, 126–27 (2d Cir. 2013). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quotation marks omitted). In reviewing a district court's judgment, we consider only "the original papers and exhibits filed in the district

court."  Fed. R. App. P. 10(a)(1).[1]

**I.      Discrimination Under Title VII, 42 U.S.C. § 1981, and the NYSHRL**

Discrimination claims under Title VII, 42 U.S.C. § 2000e–2(a)(1), 42 U.S.C. § 1981(a), and the NYSHRL, N.Y. Exec. L. § 296(1)(a), are analyzed under the McDonnell Douglas burden-shifting framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015) (Title VII and § 1981); Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010) (NYSHRL).  First, the plaintiff must "establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 83 (2d Cir. 2015) (quotation marks omitted).  Once an employee has demonstrated a prima facie case, "[t]he burden

---

[1] This Court may consider extra-record evidence in "extraordinary circumstances," as permitted under Federal Rule of Appellate Procedure 10(e)(2).  Int'l Bus. Machs. Corp v. Edelstein, 526 F.2d 37, 45 (2d Cir. 1975); Fed. R. App. P. 10(e)(2); see Loria v. Gorman, 306 F.3d 1271, 1280 n.2 (2d Cir. 2002).  Here, we find no extraordinary circumstances warranting our consideration of the new evidence Zheng-Smith presents for the first time on appeal.   She was represented by counsel in the District Court and does not assert that the evidence submitted for the first time in her appendix on appeal was omitted from the record by error or accident.

then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the disparate treatment." Id. (quoting McDonnell Douglas Corp., 411 U.S. at 802). "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination." Id. (quotation marks omitted).

We conclude that Zheng-Smith failed to establish the fourth element of a prima facie case. Her only allegations that might raise an inference of race or national origin discrimination were that non-Chinese residents who underperformed were not put in remediation or on probation, and that Riggs ridiculed and mocked her accent. We consider each of these in turn.

To raise an inference of discrimination through comparison to another employee outside the protected class, the plaintiff must show that the comparator "engaged in comparable conduct." Ruiz v. Cnty. of Rockland, 609 F.3d 486, 493–94 (2d Cir. 2010) (quotation marks omitted). Here, Zheng-Smith claims that non-Chinese residents had lower test scores than she had but were not penalized. But we conclude that these unnamed residents are not suitable comparators because Zheng-Smith's performance was determined to be deficient in several job

5

categories that risked patient safety. The only specific comparator Zheng-Smith proffered on summary judgment was Rachel Chamberlain, a white resident who, like Zheng-Smith, was accused of surreptitiously recording other doctors in the workplace and who was the subject of some performance-related concerns. But Zheng-Smith's employment was terminated not only because she allegedly made the audio recording. The decision was also based on numerous serious concerns about her performance of essential duties and more extensive disciplinary history. We therefore agree with the District Court that the comparison with Chamberlain does not raise an inference of discrimination. See id.

We turn next to Zheng-Smith's claims arising from Riggs's conduct. Even if Zheng-Smith could establish a prima facie case of national origin discrimination based on Riggs's conduct, the District Court correctly granted summary judgment for Defendants on her discrimination claims. That is because NUMC demonstrated that it had legitimate reasons for terminating her employment, which Zheng-Smith failed to show were pretextual. At this second step of the McDonnell Douglas analysis, the Court considers whether the defendants have "introduced evidence that, taken as true, would permit the conclusion that there

was a nondiscriminatory reason." Holcomb v. Iona Coll., 521 F.3d 130, 141 (2d Cir. 2008) (quotation marks omitted). NUMC satisfied this burden. For the following reasons, Zheng-Smith has not demonstrated that the nondiscriminatory reason for her termination was a pretext for discrimination.

In March 2016 a number of Zheng-Smith's supervisors and coworkers at a different hospital wrote to NUMC to express grave concerns about her performance and recommended that her employment be terminated immediately because her continued employment posed a serious risk to patients' safety. NUMC did not follow this recommendation. Instead, it continued to employ her, giving her more than a year and a half to demonstrate that she could adequately perform her job. Her performance was reviewed by several supervisors, and the decision to keep her on probation was reached by "a consensus" of the faculty. Record on Appeal ("ROA") doc. 33 at 10. It is also undisputed that the decision to terminate her employment was made by a "unanimous vote" of supervising faculty, and not by Riggs alone. Id. at 11. We agree with the District Court that no reasonable jury could find that these serious performance-related concerns expressed by the entire supervising faculty were a pretext for national origin

7

discrimination by Riggs.

**II.    Hostile Work Environment Under Title VII and the NYSHRL**

"Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard." Summa v. Hofstra Univ., 708 F.3d 115, 123–24 (2d Cir. 2013). "To prove a hostile work environment claim . . . a plaintiff must establish that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Legg v. Ulster Cnty., 979 F.3d 101, 114 (2d Cir. 2020) (quotation marks omitted). "[M]istreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic"—here, race or national origin. Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). "In considering whether a plaintiff has met this burden, courts should examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20

(2d Cir. 2014) (quotation marks omitted).

The only alleged mistreatment with a nexus to Zheng-Smith's race or national origin concerns Riggs's treatment of her accent. Riggs's conduct provides some evidence of ridicule and insult based on national origin. But Zheng-Smith failed to demonstrate in her affidavit or deposition that his conduct was "sufficiently severe or pervasive" to amount to a hostile work environment. Legg, 979 F.3d at 114 (quotation marks omitted). "Isolated incidents generally will not suffice to establish a hostile work environment unless they are extraordinarily severe." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010). Accordingly, the District Court correctly granted summary judgment to Defendants on her hostile work environment claim.

**III.    Retaliation under Title VII and the NYSHRL**

Title VII and the NYSHRL also prohibit employers from retaliating against an employee because she has opposed an unlawful discrimination practice. 42 U.S.C. § 2000e–3(a); N.Y. Exec. L. § 296(7). Retaliation claims under Title VII and the NYSHRL, like discrimination claims, are analyzed under the McDonnell Douglas burden-shifting framework. Summa, 708 F.3d at 125. A prima facie

9

case of retaliation is established by showing that "defendants discriminated—or took an adverse employment action—against [the plaintiff]" and that "the adverse action would not have occurred in the absence of the retaliatory motive." Vega, 801 F.3d at 90–91 (quotation marks omitted).

Zheng-Smith asserts that her employment was terminated in October 2017 in retaliation for her September 29, 2017 demand letter complaining of discrimination. Even if she could establish a prima facie case of retaliation, the District Court correctly granted summary judgment to Defendants on this claim because—as previously discussed—Defendants articulated a nondiscriminatory reason for terminating her employment, and Zheng-Smith failed to present evidence from which a reasonable factfinder could conclude that this reason was pretext for retaliation against her for complaining of discrimination. And Defendants presented unrebutted evidence that, between September 20 and Zheng-Smith's suspension without pay on October 3, two significant events—a meeting to discuss her "unexcused absence from work," ROA doc. 33 at 11, and a report from a doctor that she was audio recording other doctors and patients without their knowledge—provided additional reasons to terminate her already

10

precarious employment.

We have considered all of Zheng-Smith's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court