STATE of North Dakota,
Plaintiff/Appellee,

v.

Michael Wayne PHELPS,
Defendant/Appellant.

Crim. No. 692–A.

Supreme Court of North Dakota.

Oct. 6, 1980.

Bair, Brown & Kautzmann, Mandan, for defendant and appellant; argued by Dwight C. H. Kautzmann.

Thomas M. Tuntland, State's Atty., Mandan, for plaintiff and appellee.

PAULSON, Justice.

Michael Wayne Phelps appeals from a judgment of conviction entered against him by the Morton County District Court. On March 5, 1980, a 12-member jury rendered guilty verdicts against Phelps on the charges of arson and burglary. Previously the State had appealed from an order of the Morton County District Court that directed certain evidence to be suppressed as the result of an illegal search and seizure. In *State v. Phelps*, 286 N.W.2d 472 (N.D.1979),

we affirmed the district court's issuance of the suppression order. We now affirm the conviction entered against Phelps on March 5, 1980, but remand the case for resentencing.

During the evening of May 10, 1979, Michael Wayne Phelps was a customer at Ma's Place, a liquor establishment located in Mandan. At closing time, 1:00 a. m., on May 11, 1979, Mavis Monahan, the owner of Ma's Place, requested Phelps to leave the premises. Phelps refused to leave and admitted committing a previous burglary in another business owned by Monahan. Phelps inquired about the bar's burglar alarm and boasted to Monahan that he could break into any building in Mandan. Phelps also stated that he could inflict great damage whenever he cared to do so. Phelps finally left the bar at 1:30 a. m., but threatened to return and perpetrate destruction. He remained in the vicinity for some time thereafter, and pounded repeatedly on the outside of the bar door.

Monahan called the Mandan Police at approximately 2:03 a. m. and two officers, Howard Moldenhauer and Richard Ladwig, proceeded to Ma's Place. When they arrived there, Phelps was no longer in the area. Monahan and the bartender on duty informed the officers of Phelps's conduct and his burglary confession and threat. After the officers learned the facts and checked out the area, they returned to routine patrol. Officer Moldenhauer knew that Phelps had been convicted of a previous burglary in Mandan, and that he had been found in possession of a shotgun which was stolen from a Mandan police car during another burglary. Moldenhauer also knew that Phelps was a suspect in several other burglaries.

At approximately 3:46 a. m., a burglar alarm was tripped at the Clinic building in Mandan. The Clinic building is located less then one block from Ma's Place. A police dispatcher immediately radioed information on the tripping of the burglar alarm to the patrol officers then on duty. Officer Moldenhauer radioed to police headquarters that a fire was burning inside the Clinic

building, and then drove east down an alley which ran behind Ma's Place. As he came to an intersection of the alley with a north–south street, Officer Moldenhauer looked south and saw an individual running. Moldenhauer recognized the individual as Michael Phelps and commenced pursuit. Phelps was found flattened up against a doorway and was taken into custody by Officer Ladwig, but was not arrested.

Phelps was transported to the Mandan Police Department and was told repeatedly that he was not under arrest. Mandan Police Detective Dennis Bullinger's attempts to interrogate Phelps met with little success. Phelps also refused to voluntarily give up his clothes as evidence. Bullinger then forcibly removed Phelps's boots and scraped them for possible glass chips. Three Mandan police officers physically held Phelps down against his will and forcibly removed his shirt and trousers. Detective Joanne Kok took pictures of cuts and scratches on Phelps's neck, left arm, and hands. Phelps was given a pair of coveralls and released. No search warrant was obtained by the police officers at any time.

On May 11, 1979, a probable cause hearing was held before the Morton County Court of Increased Jurisdiction at which hearing it was determined that probable cause existed to issue a complaint against Michael Phelps. Phelps was arrested and charged with burglary and arson. A preliminary hearing was held and Phelps was bound over for arraignment in the district court. At the arraignment, Phelps moved to suppress the clothing seized as evidence during the police detention of Phelps on May 11, 1979. On June 26, 1979, an evidentiary hearing was held and the court concluded that, although there was probable cause to arrest Phelps, the police failed to make an arrest and failed to procure a search warrant for the purpose of the seizure of Phelps's clothing and boots. Phelps's motion to suppress those items was granted and the State appealed from the order suppressing the evidence. We affirmed the district court's issuance of the suppression order in *State v. Phelps*, 286 N.W.2d 472 (N.D.1979).

Following the appeal, the State proceeded with a trial on the charges of arson and burglary. Over the objection of Phelps's counsel, the State introduced the pictures of Phelps which were taken by Detective Kok on May 11, 1979. The pictures disclosed the cuts and scratches on Phelps's neck and left arm. Phelps's counsel also objected to testimony by Mavis Monahan about the statements made by Phelps in Ma's Place.

After the jury had returned guilty verdicts on the charges of burglary and arson, the court dismissed the jury and sought to immediately impose sentence upon Phelps. Phelps's counsel objected to the immediate sentencing procedure because Phelps had medical problems and a prior criminal record. Information on his medical problems and Phelps's criminal record was contained in a pre–sentence report prepared by the North Dakota Department of Parole and Probation. The pre–sentence report was supplemented by information from the Jamestown State Hospital, the Hennepin County Medical Center at Minneapolis, Minnesota, and the Federal Probation Department. The district court allowed Phelps's counsel thirty minutes to review the pre sentence report before sentencing Phelps. Phelps's counsel objected to the sentencing procedure and argued that he could not evaluate the lengthy pre–sentence report in such a brief period of time.

On appeal, Phelps's counsel raises three issues for our consideration. The issues are as follows:

(1) Whether or not the court properly admitted into evidence testimony that the defendant admitted committing previous burglaries, and testimony of the defendant's threats to commit future burglaries and crimes of destruction under the provisions of Rule 404(b) of the North Dakota Rules of Evidence;

(2) Whether or not the court properly admitted into evidence the photographs of the defendant taken after he had been taken into custody, but prior to his formal arrest; and

(3) Whether or not the court abused its discretion in refusing to allow Phelps's counsel more time to review the pre–sentence report.

## I.

Mavis Monahan testified that the defendant confessed to a burglary committed in a business formerly owned by Monahan. In addition, Monahan testified that Phelps asked about the burglar alarm system present in Ma's place and she also testified that Phelps stated that he could "break into any building" in Mandan and could inflict damage "like you have never seen before". Phelps's counsel contends that the admission into evidence of the statements made by Phelps to Monahan was erroneous because the statements were prejudicial and did not fall within the exceptions provided by Rule 404(b), N.D.R.Ev., for proof of motive and intent. The State contends that the testimony was properly admitted as proof of notice and intent. Rule 404(b), N.D.R.Ev., states:

"RULE 404—CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT, EXCEPTIONS: OTHER CRIMES

"(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In *State v. Stevens*, 238 N.W.2d 251 (N.D.1975), we enunciated criteria to be considered whenever subdivision (b) of Rule 404, N.D.R.Ev., is invoked. A stricter showing of relevancy is required to prove identity or the doing of the criminal act by the accused than when it is offered to prove knowledge, intent, or state of mind. There must be clear and convincing evidence of prior similar acts. Evidence of prior wrongs may not be considered unless proof exists of commission of the crime charged.

Finally, the court must balance the aims of full disclosure and fairness to the defendant when they are in conflict. Thus, even if the proffered evidence of other crimes has probative value in proving something other than the defendant's propensity to commit the crime charged, the evidence is not admitted as a matter of course. Rule 404, N.D.R.Ev., prohibits only one series of evidential hypothesis: a man who commits a crime has a defect of character; a man with a defect of character is more likely to have committed the act in question.

■ The testimony by Monahan concerning Phelps's statements cannot correctly be characterized as other crimes' evidence under Rule 404(b), N.D.R.Ev. Although Phelps's admission to committing a prior burglary might fall within the category of "other wrongs", we are convinced that the statements would not suffice as evidence of other crimes or wrongs because the statements made by Phelps concerning commission of burglaries and other acts of destruction are not evidence of other crimes or wrongs. While the State improperly characterized the statements as other crimes' evidence, the statements were introduced on the issue of Phelps's condition, attitude, appearance, and frame of mind, and not as evidence of other crimes. The district court's instruction to the jury carefully accounted for the fact that the statements made by Phelps could only be considered on the issue of intent or proof of motive.

■ Phelps's counsel cross–examined several of the State's witnesses about the degree of Phelps's intoxication on May 11, 1979, in order to establish intoxication as a defense to the charges of arson and burglary. The crimes of arson under § 12.1–21–01 and burglary under § 12.1–22–02, N.D.C.C., require intent as a mental state necessary for committing the offenses. Thus, Phelps's condition, attitude, appearance, and frame of mind were properly issues in the case. However, Phelps's counsel contends that the statements made by Phelps related to the charges of burglary alone and did not concern arson. In addition, Phelps's counsel contends that the statements made to Mon-

ahan concerned only the intent on the part of Phelps to commit burglary in Ma's Place and not the intent to commit burglary in the Clinic building where the crimes of burglary and arson occurred. We do not accept these contentions since the testimony by Monahan concerning Phelps's statements in Ma's Place clearly relates to the issue of intent. Phelps stated not only that he committed a prior burglary but also that he could break into any building and could inflict great damage. These statements clearly evince a desire to commit burglary beyond the confines of Ma's Place. In addition, Phelps's statements cannot be restricted to the issue of intent to commit burglary since the statements on inflicting damage clearly transcend the desire to commit burglary alone.

■ The testimony served to establish that Phelps committed a previous burglary and was about to consider committing another burglary. The testimony helped to establish Phelps's condition, attitude, appearance, and frame of mind, and negated the intoxication defense which Phelps's counsel sought to establish. Where evidence is offered under an erroneous theory but was submitted to the jury on a correct theory, the error is without prejudice. *See Davis v. Reichert*, 197 Minn. 287, 266 N.W. 855 (1936); *Hegtvedt v. Prybil*, 223 N.W.2d 186 (Iowa 1974). We conclude that the district court properly admitted into evidence the testimony by Monahan.

II.

Phelps contends that the photographs which were taken at the Mandan Police Department were not admissible in evidence because they fell within the "fruit of the poisonous tree" doctrine which excludes evidence derived from information gained in illegal searches and seizures. In *State v. Phelps*, 286 N.W.2d 472 (N.D.1979), we established that the boots and clothing worn by Phelps were the subject of an improper search and seizure and were properly suppressed as evidence. Phelps's counsel contends that the shirt would not have disclosed the cuts and scratches on Phelps's

neck, left arm, and hands. The shirt had a collar and long sleeves, but was torn in the area where the cuts on Phelps's arm were located. The State contends that the shirt did not conceal the cuts and scratches from the view of the officers who arrested Phelps and subsequently searched him at the police department. The State contends that the facts of the case fall within the "inevitable discovery" exception to the exclusionary rule.

■ The exclusionary rule of evidence was first announced by the United States Supreme Court in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). In *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the United States Supreme Court extended the exclusionary rule to State courts. The rule renders inadmissible all evidence obtained in searches and seizures which transgress the command of the Fourth Amendment of the United States Constitution. The prohibition is designed to operate as a safeguard for personal privacy and dignity by preventing against unwarranted intrusions by the State. The prohibition also serves to prevent coerced confessions and preserve judicial integrity.

■ The fruit–of–the–poisonous–tree doctrine excludes from evidence information gained in illegal searches and seizures. The doctrine is an extension of the exclusionary rule and operates to prohibit the indirect use of information gained in an illegal search and seizure. The foundation for the doctrine was begun in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); and *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). In *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1973), the United States Supreme Court presented a standard for de-

termining whether proffered evidence is the fruit of a poisonous tree. Information is not the fruit of a poisonous tree simply because it would not have come to light without the illegal action of the police; rather, the proper inquiry is whether or not the evidence was obtained by exploitation of the illegal action or instead by means sufficiently distinguishable to be purged of the primary taint. Thus, facts learned as a result of information obtained in an illegal search and seizure do not become inaccessible by reason of the illegality. Evidence is not excluded when knowledge of the evidence can be attributed to an independent source. Facts not obtained from an independent source, but distant in causal connection from an illegal search and seizure, are admissible in evidence. *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

■ The inevitable-discovery theory had its first clear application in *Somer v. United States*, 138 F.2d 790 (2d Cir. 1943). The theory establishes that evidence derived from information obtained in an unlawful search is not inadmissible under the fruit of the-poisonous-tree doctrine where it is shown that the evidence would have been gained even without the unlawful action. *State v. Lamb*, 116 Ariz. 134, 568 P.2d 1032 (1977). In the case of *In Interest of M.D.J.*, 285 N.W.2d 558 (N.D.1979), we noted that the status of the inevitable–discovery theory is unclear in North Dakota. We now hold that the inevitable–discovery theory is a part of North Dakota law as a necessary corollary and exception to the fruit of·the poisonous–tree doctrine and the exclusionary rule.[1]

The inevitable discovery theory has the support of the vast majority of the courts which have considered it.[2] *State v. Tilley*,

---

1. Although the status of the independent - source theory as an exception to the exclusionary rule is not decided today, we note that the inevitable–discovery theory is a variation of the independent–source theory. *See In Interest of M.D.J.*, 285 N.W.2d 558, 564 n. 7 (N.D.1979). For further discussion of exceptions to the exclusionary rule, *see* LaCorent & Girese, "The

Inevitable Discovery Rule, An Evolving Exception to the Constitutional Exclusionary Rule", 40 Albany L.Rev. 483 (1976); Annot., 43 A.L. R.3d 385 (1972).

2. The inevitable–discovery rule has not as yet been recognized by the United States Supreme Court as an exception to the exclusionary rule.

107 Ariz. 34, 481 P.2d 271 (en banc), *cert. denied*, 404 U.S. 847, 92 S.Ct. 151, 30 L.Ed.2d 84 (1971); *Lockridge v. Superior Court*, 3 Cal.3d 166, 89 Cal.Rptr. 731, 474 P.2d 683 (1970), *cert. denied* 402 U.S. 910, 91 S.Ct. 1387, 28 L.Ed.2d 652 (1971); *People v. Pearson*, 67 Ill.App.3d 300, 24 Ill.Dec. 173, 384 N.E.2d 1331 (1978); *State v. Williams*, 285 N.W.2d 248 (Iowa 1979). Nevertheless, the theory is not outside the realm of criticism. The most common criticism of the theory is that its use will defeat the purposes of the exclusionary rule. For this reason, we adopt the position on the inevitable–discovery theory espoused by Professor LaFave in his treatise on the Fourth Amendment entitled "Search and Seizure." In order to apply the inevitable discovery theory the State must meet a two part test. First, use of the doctrine is permitted only when the police have not acted in bad faith to accelerate the discovery of the evidence in question. Second, the State must prove that the evidence would have been found without the unlawful activity and must show how the discovery of the evidence would have occurred.[3]

 The first requirement does not prohibit use of the inevitable–discovery theory in all instances where the police action was unlawful; rather, the theory cannot be used only in instances where it is clear that the police acted in bad faith in order to accelerate the discovery of the evidence in question. We are convinced that the action by the police officers in this case is not of the degree which would require us to prevent application of the inevitable–discovery theory. The police officers used physical force to obtain Phelps's boots and clothing; however, the police officers were at all time cognizant of the cuts and scratches on Phelps's hands, left arm, and neck.

The Court has declined to consider the rule's constitutionality on several occasions. *See, e. g., Fitzpatrick v. New York*, 414 U.S. 1050, 1051, 94 S.Ct. 554, 555, 38 L.Ed.2d 338, 339 (1973) (White, J., dissenting from denial of certiorari).

**3.** *See* 3 W. LaFave, Search and Seizure § 11.4 (1978).

The second requirement for application of the inevitable discovery theory requires that the State show that the evidence would have been discovered. A showing that discovery might have occurred is entirely inadequate. In the instant case, the record abounds with evidence that the police officers were aware of the cuts and scratches before Phelps was subjected to the illegal search. In fact, the State introduced the photographs into evidence for the sole purpose of illustrating what the police officers observed when they took Phelps into custody. Since both requirements for admission of evidence under the inevitable–discovery theory were satisfied, we conclude that the district court properly admitted the photographs into evidence.[4]

### III.

Finally, Phelps contends that the sentencing procedure used by the district court violated due process because his counsel was not afforded an adequate time period within which to review the presentence report. Rule 32 of the North Dakota Rules of Criminal Procedure provides for imposition of sentence without unreasonable delay. Nevertheless, we view the district court's actions in this case with disfavor since the court failed to extend to the defendant and his counsel a reasonable opportunity to read the report of the presentence investigation, in violation of Rule 32(c)(3)(i), N.D.R. Crim.P. Disclosure of the medical information contained in the report was not harmful to the defendant. No reason existed for the court's refusal to allow the defendant and his counsel sufficient time to read the report. Phelps's counsel could not recommend alternatives in sentencing based upon a cursory examination of the complicated medical history of Phelps as contained in the presentence report.

**4.** We note that in the case of *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1245, 63 L.Ed.2d 537 (1980), the United States Supreme Court held that the in court identification of the accused by the victim of the crime was not suppressible as fruit of the accused's unlawful arrest.

Sentencing is a critical stage of a criminal proceeding at which the defendant is entitled to effective assistance of counsel. *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). Fundamental principles of procedural fairness apply with no less force at the penalty phase of a criminal trial than they do in the guilt–determining phase of a criminal trial. *Presnell v. Georgia*, 439 U.S. 19, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978). Rule 32 (c)(3)(i), N.D.R.Crim.P., requires that the trial court afford to the defendant and his counsel a reasonable opportunity to read the presentence report and comment thereon. Because the trial court allowed Phelps's counsel only one–half hour to read and investigate the details of Phelps's complicated medical history, we conclude that the trial court acted unreasonably and abused its discretion. The defendant and his counsel will be given a reasonable opportunity to review the presentence report and to comment on that report. The trial court's imposition of sentence will be set aside and the case is remanded for the purpose of resentencing.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.