Jensen, Justice.
 

 [¶ 1] JanMichel Wangstad ("Wangstad") appeals a criminal judgment entered after a jury verdict finding him guilty of attempted
 
 *518
 
 murder. Wangstad argues the district court erred in the admission of social media posts he made prior to the alleged crime, the jury was given erroneous instructions, and the evidence was insufficient to support the conviction. We affirm the judgment of conviction.
 

 I
 

 [¶ 2] On March 18, 2016, West Fargo police were dispatched to the Rodeway Inn in response to a report of a man with a gun. Responding officers located the source of the disturbance in one of the rooms. One of the officers knocked on the door of the room and announced, "police." A female acquaintance of Wangstad opened the door and began to step back into the room. The officers told the female to get down on the ground. Two officers then entered a few steps into the room and noticed Wangstad standing by a desk. Wangstad made a fast-paced movement from the desk to the corner of the room where he fired a gun in the direction of one of the officers. The bullet traveled through the wall above the entry door to the room and lodged into the wall of another room. The officers then backed out of the room.
 

 [¶ 3] Wangstad admitted at trial that he moved toward the corner of the room, pulled the gun from his waistband, fired the gun, and the bullet hit above the door where one of the officers was standing. Wangstad stated he did not intend to shoot the officer; he just wanted to "get him out of the room as quickly as possible." Wangstad was convicted by a jury on the charge of attempted murder.
 

 [¶ 4] On appeal, Wangstad argues the statements he made via social media posts prior to the alleged crime should not have been admitted into evidence. Wangstad also argues the jury was not properly instructed regarding the essential elements of attempted murder under N.D.C.C. §§ 12.1-06-01, 12.1-16-01(1)(a). Lastly, Wangstad argues the evidence presented at trial was insufficient to warrant a finding of guilty beyond a reasonable doubt.
 

 II
 

 [¶ 5] The State offered as evidence portions of two social media posts that had been authored by Wangstad. The State offered the posts as evidence of Wangstad's state of mind arguing the posts demonstrated that Wangstad had an anti-law enforcement disposition and violent intentions. Wangstad objected to the relevancy of the posts, arguing that N.D.R.Ev. 403 precluded the posts from being admitted as evidence because they were not probative to the issues being tried and, if probative, were unduly prejudicial. The district court overruled the objection, admitted the evidence, and inquired whether Wangstad wanted the entirety of both posts read to the jury. Wangstad requested a complete version of both posts be read to the jury.
 

 [¶ 6] "In ruling on the relevancy of evidence, a trial court has broad discretion to balance the probative value of the evidence against the risk of unfair prejudice, and its decision will not be overturned on appeal absent an abuse of discretion."
 
 State v. Valgren
 
 ,
 
 411 N.W.2d 390
 
 , 394 (N.D. 1987) (citing
 
 State v. Newnam
 
 ,
 
 409 N.W.2d 79
 
 , 87 (N.D. 1987) ). A trial court has "broad discretion in determining whether to admit or exclude evidence, and its determination will be reversed on appeal only for an abuse of discretion."
 
 State v. Chisholm
 
 ,
 
 2012 ND 147
 
 , ¶ 10,
 
 818 N.W.2d 707
 
 . "[T]his Court does not reverse a district court's decision to admit or exclude evidence on the basis of relevance unless the district court abused its discretion by acting in an arbitrary, unreasonable, or unconscionable manner."
 

 *519
 

 State v. Bjerklie
 
 ,
 
 2006 ND 173
 
 , ¶ 4,
 
 719 N.W.2d 359
 
 (citing
 
 Rittenour v. Gibson
 
 ,
 
 2003 ND 14
 
 , ¶ 35,
 
 656 N.W.2d 691
 
 ).
 

 [¶ 7] Here, the district court noted the social media posts were prejudicial. The court then extensively balanced the probative value of the posts and the possible prejudice created by the posts to determine if they were unduly prejudicial and required to be excluded from evidence. The court noted that social media related evidence was becoming increasingly common in many different types of cases. The court considered the proximity in time the posts were made to the incident being tried and provided, in part, the following summary:
 

 And all of a sudden we have, in the 21st Century, temporary expressions of state of mind that never existed before. It's compelling evidence. It is the best evidence. How could we not consider it? What fact finder would not want to know this? What fair fact finder would not want to know this, that within ten days prior to this event, there was talk about ending it all and aggressive action toward law enforcement.
 

 ....
 

 To me, these highlighted statements are so relevant and so compelling. Our only issue in this case is state of mind. That's why we're arguing about well, do we have a lesser included of aggravated, or this and that. We know the bullets were fired in the general direction.
 

 The only issue we have in this case, and I think it's even been alluded to the jury in opening statements, is state of mind. That's why we're here. What better evidence of state of mind exists than this? I can't think of any.
 

 The district court also instructed the jury that their consideration of the posts was limited to Wangstad's state of mind and could not be considered for any other purpose. After reviewing the district court's consideration of the relevancy of the posts, we conclude the court did not act in an arbitrary, unreasonable, or unconscionable manner and therefore did not abuse its discretion in admitting the posts.
 

 III
 

 [¶ 8] On appeal, Wangstad argues the posts should have been treated as prior bad acts evidence thus requiring analysis under N.D.R.Ev. 404(b). Under Rule 404(b)(1), "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." N.D.R.Ev. 404(b)(2). Under Rule 404(b), when the prosecution intends to introduce evidence of prior bad acts, it must generally give notice so that an N.D.R.Ev. 403 analysis can be done by the court.
 
 State v. Schmeets
 
 ,
 
 2009 ND 163
 
 , ¶ 16,
 
 772 N.W.2d 623
 
 .
 

 [¶ 9] Statements made by a defendant showing a defendant's attitude, state of mind, and intent to commit the crime charged are not subject to N.D.R.Ev. 404(b) if they do not constitute prior bad acts.
 
 State v. Phelps
 
 ,
 
 297 N.W.2d 769
 
 , 773 (N.D. 1980). In
 
 Phelps
 
 , a witness testified the defendant made prior statements about his ability to commit future burglaries.
 

 Id.
 

 at 772
 
 . This Court held that 404(b) does not apply and the statements should be construed as evidence of "frame of mind" and not prior acts.
 
 Id
 
 . at 773. This Court also noted the district court's instruction to the jury carefully accounted for the fact that the statements made by the defendant were only to be considered
 
 *520
 
 on the issue of intent or proof of motive.
 

 Id.
 

 [¶ 10] Our prior decision in
 
 Phelps
 
 is controlling in our resolution of this case with regard to the portions of the posts offered by the State. Wangstad's first post stated, "I'll be locked away in prison for a very brutal homicide." Wangstad was charged with attempted murder which requires the specific intent to commit a murder and the post was a reference to his potential future behavior. Wangstad's first post also asserted that he would commit a homicide, was forward looking, and relevant to his intent on the day of the incident. Wangstad's second post referred to the Minnesota Department of Corrections as the "MN Dept of Corruptions." The post also states "[the MN Dept. of Corrections] get to see what happens when you push a good person to[o] far." These statements were also forward looking and would tend to make it more probable that Wangstad had motive to commit a crime involving law enforcement.
 

 [¶ 11] Wangstad relies heavily on
 
 State v. Aabrekke,
 
 where evidence of prior sexual contact with a victim was found to fall under N.D.R.Ev. 404(b).
 
 2011 ND 131
 
 ,
 
 800 N.W.2d 284
 
 . In
 
 Aabrekke
 
 , testimony of prior sexual contact with a victim was admitted without an N.D.R.Ev. 403 analysis or a jury instruction regarding the evidence's limited purpose.
 
 See generally
 

 id
 
 . In the current matter, the evidence offered by the State was not evidence of Wangstad's prior conduct, and does not fall under Rule 404(b) as did the testimony of prior sexual abuse in
 
 Aabrekke
 
 . Further, the district court here weighed potential prejudice to the defendant against the relevance of the evidence and also gave the jury a limiting instruction. We conclude that our decision in
 
 Phelps
 
 , not
 
 Aabrekke
 
 , is controlling and the statements offered by the State were not evidence of prior bad acts.
 

 IV
 

 [¶ 12] While we conclude the statements offered by the State were not evidence of prior bad acts requiring consideration under N.D.R.Ev. 404(b), this case is complicated by Wangstad's subsequent election to include the entirety of the posts into evidence. The additional material within the posts included statements that can be considered evidence of prior bad acts. In particular, the following statements were contained in the second post:
 

 I've done enough time for this "sexual" crime! I've given enough, I couldn't go back, not again. So I ran. Was going to change my name and take my life back! 13 years! 13 years of hell! I've he[a]rd horrible things in that "classroom". Things I'll never be able to un-hear! No Internet, no "sexually explicit" [material]. No contact with anyone under ANYONE under the age of 18. Safety plans. Supervisors, and violation after violation.
 

 Wangstad argues he was placed in an unfair position of having either to exclude a portion of the statements from evidence which would distort the context of the parts that were admitted, or allow into evidence the full statements (including the statements regarding the prior bad acts) to provide the proper context of the admissible portions.
 

 [¶ 13] Wangstad did not assert an objection regarding the prior bad acts at trial. Our review is therefore limited to determining whether the alleged error infringed upon Wangstad's substantial rights and if the error was noticeable notwithstanding the lack of an objection; obvious error analysis.
 
 State v. Mathre
 
 ,
 
 2004 ND 149
 
 , ¶ 21,
 
 683 N.W.2d 918
 
 .
 

 [¶ 14] To establish obvious error, a defendant must show: (1) error; (2)
 

 *521
 
 that is plain; and (3) affects substantial rights.
 
 State v. Anderson
 
 ,
 
 2003 ND 30
 
 , ¶ 8,
 
 657 N.W.2d 245
 
 . "We exercise our power to consider obvious error cautiously and only in exceptional situations where the defendant has suffered serious injustice."
 
 State v. Glass
 
 ,
 
 2000 ND 212
 
 , ¶ 4,
 
 620 N.W.2d 146
 
 (internal quotation marks omitted). When analyzing obvious error, we examine the entire record for the probable effect of the alleged error in light of all the evidence.
 
 Anderson
 
 , at ¶ 8. This Court has also noted the following regarding obvious error:
 

 Even if the defendant meets his burden of establishing obvious error affecting substantial rights, the determination whether to correct the error lies within the discretion of the appellate court, and the court should exercise that discretion only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."
 
 State v. Olander
 
 ,
 
 1998 ND 50
 
 , ¶ 16,
 
 575 N.W.2d 658
 
 (citations and quotation marks omitted). An alleged error does not constitute obvious error "unless there is a clear deviation from an applicable legal rule under current law."
 
 Id
 
 . at ¶ 14.
 

 State v. Patterson
 
 ,
 
 2014 ND 193
 
 , ¶ 4,
 
 855 N.W.2d 113
 
 .
 

 [¶ 15] The district court engaged in an extended analysis of the probative and prejudicial value of the evidence. The State did not offer, and the district court offered to exclude from evidence, the portions of the posts that included the prior bad acts. The district court provided a limiting instruction to the jury. We conclude that under these circumstances, the inclusion of the evidence of prior bad acts was not obvious error.
 

 V
 

 [¶ 16] Wangstad also argues the jury received deficient instruction regarding the elements of attempted murder. At trial, Wangstad did not assert an objection to the instructions and did not request an alternate instruction. Therefore, this Court's review is limited to whether the jury instructions constitute plain or obvious error.
 
 State v. Martinez
 
 ,
 
 2015 ND 173
 
 , ¶ 9,
 
 865 N.W.2d 391
 
 .
 

 [¶ 17] The relevant jury instruction reads as follows:
 

 1) On or about March 18, 2016, in Cass County, North Dakota, the Defendant, Jan-Michel Wangstad; 2) engaged in conduct which constituted a substantial step toward the killing of Pete Nielson [sic], a human being, by firing a handgun in an attempt to kill him; 3) intentionally.
 

 [¶ 18] The criminal attempt statute requires the State to prove the defendant intentionally engaged in conduct which constituted a substantial step toward the commission of the crime, while acting with culpability otherwise required for the underlying offense. N.D.C.C. § 12.1-06-01(1). The culpability element for murder is "intentionally or knowingly." N.D.C.C. § 12.1-16-01(1)(a). Therefore, the State was required to prove Wangstad intentionally engaged in conduct which constituted an essential step toward intentionally or knowingly killing the law enforcement officer.
 

 [¶ 19] Wangstad suggests the third clause in the instruction constitutes plain and obvious error due to the ambiguity of whether "intentionally" applies to all or part of clause two of the instruction. Wangstad's argument is the instruction did not adequately require the State to prove that Wangstad both 1) intentionally engaged in conduct which constituted an essential step toward intentionally or knowingly killing the law enforcement officer, and 2) that he intended to kill the law enforcement officer.
 

 *522
 
 [¶ 20] Obvious error is "an error or defect that is obvious and affects substantial rights."
 
 Martinez
 
 ,
 
 2015 ND 173
 
 , ¶ 9,
 
 865 N.W.2d 391
 
 . Obvious error "must have been prejudicial, or affected the outcome of the proceeding."
 
 State v. Olander
 
 ,
 
 1998 ND 50
 
 , ¶ 15,
 
 575 N.W.2d 658
 
 (citing
 
 United States v. Olano
 
 ,
 
 507 U.S. 725
 
 , 734-35,
 
 113 S.Ct. 1770
 
 ,
 
 123 L.Ed.2d 508
 
 (1993) ). Our prior cases determining obvious error with regard to jury instructions involve failure to instruct a jury on the correct burden of proof regarding self defense,
 
 Olander
 
 , at ¶ 18 ;
 
 State v. McIntyre
 
 ,
 
 488 N.W.2d 612
 
 , 614-15 (N.D. 1992), and failure to differentiate between similar counts for which the defendant had been charged.
 
 Martinez
 
 , at ¶¶ 22-23.
 
 See also
 

 State v. Wiedrich
 
 ,
 
 460 N.W.2d 680
 
 , 685 (N.D. 1990) (in homicide case with self-defense evidence, prejudicial effect of trial court's failure to instruct on included offense of negligent homicide was obvious error);
 
 State v. Hersch
 
 ,
 
 445 N.W.2d 626
 
 , 634 (N.D. 1989) (failure to instruct on statute of limitations defense was obvious error);
 
 State v. Kraft
 
 ,
 
 413 N.W.2d 303
 
 , 307 (N.D. 1987) (failure to instruct on Uniform Commercial Code defense was obvious error).
 

 [¶ 21] Wangstad analogizes his situation to non-binding authority from Colorado.
 
 Auman v. People
 
 ,
 
 109 P.3d 647
 
 (Colo. 2005).
 
 Auman
 
 involved a jury instruction as to the predicate offense of theft which was necessary for a conviction of felony murder.
 

 Id.
 

 at 663
 
 . The
 
 Auman
 
 jury instructions explicitly required a
 
 mens rea
 
 of "knowingly" for three elements, but failed to do so on a fourth element which required the same
 
 mens rea
 
 .
 

 Id.
 

 at 664
 
 . Wangstad's jury instructions are distinguishable from
 
 Auman
 
 . While Wangstad's instructions could have been worded in a clearer manner, the instructions do not obviously ignore the required
 
 mens rea
 
 concerning an essential element for conviction.
 

 VI
 

 [¶ 22] Wangstad further suggests the instructions misinformed the jury regarding the essential elements of attempted murder because the instructions used the phrase "toward the killing of" instead of tracking the statutory language which reads "causing the death of." This Court has previously allowed deviation from statutory language if the jury instructions convey the "gist" of the statute.
 
 State v. Erickstad
 
 ,
 
 2000 ND 202
 
 , ¶ 23,
 
 620 N.W.2d 136
 
 . Here, the language used in the jury instructions communicates the meaning of the statute and the jury was given an accurate description of the law. We conclude the jury instructions did not constitute obvious error.
 

 VII
 

 [¶ 23] Wangstad challenges the sufficiency of the evidence used to convict him-specifically, evidence as to the essential element of intent. When considering a challenge to sufficiency of the evidence, this Court "view[s] the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the verdict to decide whether a reasonable fact finder could have found the defendant guilty beyond a reasonable doubt."
 
 State v. Carlson
 
 ,
 
 1997 ND 7
 
 , ¶ 51,
 
 559 N.W.2d 802
 
 . This Court "assume[s] the jury believed the evidence which supports the verdict and disbelieved any contrary evidence."
 

 Id.
 

 [¶ 24] Wangstad points to the testimony of an expert witness regarding the trajectory of the bullet fired to support his claim of insufficient evidence. The expert originally testified that the shot fired toward the law enforcement officer would have struck him in the head had the officer not been in a crouched position. On cross-examination,
 
 *523
 
 the expert conceded the shot was fired overhead after the officer ducked. Wangstad asserts this testimony shows that the officer's head was not in the path of the bullet, and therefore Wangstad could not have "intentionally attempt[ed] to intentionally cause the death of another human being."
 

 [¶ 25] While it is possible the law enforcement officer's head was not in the trajectory of the bullet when the gun was fired, a reasonable jury could still come to the conclusion the gunshot fired in the officer's direction was intended to hit him. For example, Wangstad may have missed hitting the officer because of his aim. Regardless, Wangstad fired a handgun in the direction of a law enforcement officer. The bullet traveled through the wall above the entry door to the room and lodged into the wall of another room. Social media posts provided evidence of Wangstad's state of mind from which the jury could conclude he intended to kill someone, specifically a member of law enforcement. Viewing all the evidence with an inference in favor of the verdict, we conclude the evidence was sufficient to convict Wangstad of attempted murder.
 

 VIII
 

 [¶ 26] The district court did not abuse its discretion in admitting social media posts containing evidence of Wangstad's state of mind and the subsequent admission of Wangstad's prior bad acts at his request was not obvious error. We also conclude the jury instructions did not constitute obvious error, and the evidence was sufficient to support the jury's verdict of guilty on the charge of attempted murder. We affirm the judgment of conviction.
 

 [¶ 27] Jon J. Jensen
 

 Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Gerald W. VandeWalle, C.J.