# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 149

State of North Dakota,                                    Plaintiff and Appellee

    v.

Salamah Qareed Pendleton,                          Defendant and Appellant

## No. 20210287

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Donald Hager, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Tufte, Justice.

Ashlei A. Neufeld (argued) and Carmell F. Mattison (on brief), Assistant State's Attorneys, and Samantha Schmidt (appeared), under the Rule on Limited Practice of Law by Law Students, Grand Forks, N.D., for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1]   Salamah Pendleton appeals from a criminal judgment after a jury found him guilty of two counts of murder, two counts of attempted murder, terrorizing, reckless endangerment, and possession with intent to deliver marijuana. Pendleton argues: (1) his constitutional right to a public trial was violated, (2) his right to be physically present at trial was violated, (3) he was convicted of a non-cognizable offense, (4) juror misconduct occurred that violated his right to confrontation and an impartial jury, and (5) the court erred by not applying the ameliorating legislation of N.D.C.C. § 19.03.1-23, reducing possession with intent to deliver marijuana to a Class C felony. We affirm the judgment in part and reverse and remand in part.

I

[¶2]   In 2020, two deputies attempted to serve eviction paperwork and remove Pendleton and his mother from an apartment unit in Grand Forks. Upon the deputies' entry into the apartment, Pendleton ran into the back bedroom and barricaded himself inside. After he refused to come out of the bedroom, the deputies broke open the door. Pendleton began firing multiple rounds at the deputies with a rifle. One of those shots fired by Pendleton fatally struck his mother, who was inside the apartment. The gunfire briefly stopped and two additional officers responded to the scene to assist the deputies. Pendleton eventually opened fire on the officers again for a second time. It was during this exchange that Pendleton shot and killed Officer Holte and injured Corporal Nord.

[¶3]   A jury trial was held in 2021. The jury acquitted Pendleton on one count of attempted murder and criminal mischief but found him guilty on the remaining counts. He appeals the criminal judgment to this Court.

II

[¶4]   Pendleton argues his right to a public trial was violated because various conferences regarding voir dire, jury selection, and trial matters were not

conducted in an open courtroom. The *de novo* standard of review applies to whether facts rise to the level of a public trial violation. *State v. Martinez*, 2021 ND 42, ¶ 19, 956 N.W.2d 772. "When considering on appeal a defendant's claim that his right to a public trial was violated, we first consider whether the claim of error was preserved at trial. We then consider the threshold question of whether there was a closure implicating the public trial right." *Id*. at ¶ 3 (citations omitted). If we determine there was a closure, "we determine whether the trial court made pre-closure *Waller* findings sufficient to justify the closure." *Id*.

A

[¶5]    First, Pendleton does not argue he preserved the public trial issue with a timely objection at the trial. Therefore, we review only for obvious error. *State v. Morales*, 2019 ND 206, ¶ 24, 932 N.W.2d 106. "To establish obvious error, the defendant must demonstrate (1) an error, (2) that was plain, and (3) affected his substantial rights." *Id*. "To constitute obvious error, the error must be a clear deviation from an applicable legal rule under current law." *Id*. If obvious error is established by the defendant, this Court has discretion to correct the error "and should correct it if it 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id*.

B

[¶6]    Second, we move to the threshold question of whether there was a closure implicating the public trial right. "We have said that brief sidebars or bench conferences conducted during trial to address routine evidentiary or administrative issues outside the hearing of the jury ordinarily will not implicate the public trial right." *Martinez,* 2021 ND 42*,* ¶ 20. "Contrary to what the 'administrative' label suggests, such proceedings are not limited to purely administrative procedures before the court, such as scheduling." *State v. Smith*, 876 N.W.2d 310, 329 (Minn. 2016) (cited to favorably in *Martinez,* 2021 ND 42 and *Morales*, 2019 ND 206). For example, routine evidentiary rulings, objection rulings, or "[m]atters traditionally addressed during private bench conferences or conferences in chambers generally are not closures implicating the Sixth Amendment." *Martinez,* 2021 ND 42, ¶ 20. Additionally, "[n]on-public

2

exchanges between counsel and the court on such technical legal issues and routine administrative problems do not hinder the objectives which the Court in *Waller* observed were fostered by public trials." *Smith*, 876 N.W.2d at 329 (quoting *U.S. v. Norris*, 780 F.2d 1207, 1210 (5th Cir. 1986)). Therefore, because administrative exchanges "ordinarily relate to the application of legal principles to admitted or assumed facts so that no fact finding function is implicated," the public trial right is not implicated for these types of exchanges. *Smith*, at 329.

[¶7]   The conferences Pendleton takes issue with are the following: (1) in-chambers discussions with the attorneys prior to the start of trial regarding logistics of trial, including COVID precautions and spacing, courtroom set-up, and capacity limitations; (2) an in-chambers meeting, occurring off the record, discussing the methods by which peremptory challenges and juror alternates would be exercised; (3) the court's dismissal of a juror that occurred off the record, but in open court; (4) in-chambers discussions, occurring off the record, discussing how the jurors would be numbered once selected; (5) an off-the-record discussion with the judge, parties, and clerk in the hallway to verify the jury selection charts were accurately filled out; (6) an in-chambers meeting, occurring off the record, after the State rested "to discuss where we're going to head on Monday" and the parties meeting in the jury deliberation room to determine placement of exhibits; (7) an off-the-record discussion at the bench with the parties discussing the numbering of exhibits; and (8) an on-the-record discussion with the judge, attorneys, and clerk outside the courtroom to review the jury verdicts for accuracy and to provide direction to the clerk reading the verdicts.

[¶8]   The conferences Pendleton takes issue with involved discussions about routine administrative and housekeeping matters. Unlike the pretrial conference held in chambers in *State v. Pulkrabek*, the challenged discussions in this case were limited to trial logistics, such as addressing the methods and procedures the parties would follow during the trial. 2022 ND 128, ¶¶ 2, 11–12, 975 N.W.2d 572 (concluding that an in-chambers meeting between the court and the parties was not a brief sidebar or bench conference because, unlike the facts of this case, there the court discussed a video recording and

3

possible evidentiary stipulations, jury instructions, and the defendant's request for his attorney to withdraw as well as the court's denial of that motion in chambers). In contrast, many of the discussions challenged here were held at the conclusion of the day to ensure the proceedings would flow efficiently the next day or to confirm the parties and the court had a shared understanding. Additionally, three of the challenged conversations were conducted to ensure accuracy and to verify forms were filled out correctly. Such exchanges do not hinder the objectives which the Court in *Waller* observed were fostered by public trials.

[¶9] Pendleton also argues that the parties exercised peremptory challenges off the record. The record does not support this assertion. Instead, the record reflects that the court requested the parties meet "in chambers off the record" to "figure out" if the parties "want to [exercise peremptories] by the rule or whether you want to exercise them on the—all 36 at one time." Such a discussion is administrative in that it addresses logistical and procedural matters. Therefore, we conclude that the challenged conferences involved discussion of routine administrative issues between counsel and the court, which do not implicate the potential abuses a public trial is designed to protect against.

[¶10] Further, unlike the circumstances in *Martinez,* 2021 ND 42, ¶¶ 37, 42, or *Morales*, 2019 ND 206, ¶¶ 24, 27, at no time did the court close the courtroom or ask members of the public to leave before any matters were discussed. Instead, the discussion regarding numbering of exhibits occurred at the bench in open court in view of the public. The content of the discussion was described by the court before it began, and the substance of the discussion was immediately summarized by the court on the record at its conclusion. This discussion was purely administrative in substance and did not constitute a closure implicating the public trial right. *See Morales*, 2019 ND 206, ¶ 17 ("Where a bench conference is held in view of both the public and the jury, despite their inability to hear what is said, the public trial right is satisfied by prompt availability of a record of those proceedings."). Similarly, while the initial review of the jury verdicts to verify the jury had checked the correct boxes did not occur in open court, the discussion was transcribed for the record.

4

*See id.* ("We have held that bench and chambers conferences may occur, so long as a record is made and the record is available to the press and the public."). Lastly, the court's dismissal of Juror 61, while not on the record, occurred in open court. Prior to the afternoon recess where the jury panel was dismissed for the day, "juror number 61 approached the court with the attorneys present and indicated she had a dying family member and I excused her." The court asked the parties if they had any objection, to which defense counsel responded, "Certainly not." When the court immediately summarizes a discussion held in open court that was not captured on the record and both parties have a chance to object to the accuracy of the summary or supplement the record as to the off-the-record events, the public trial right is satisfied. Therefore, while we remain mindful that the "use of 'off the record' discussion[s] . . . [are] disapproved of," *State v. Schlittenhardt*, 147 N.W.2d 118, 125 (N.D. 1966), the challenged conferences here were not closures implicating the public trial right.

## III

[¶11] Pendleton next argues substantive portions of voir dire and the initial review of the jury's verdicts were conducted outside his presence. Because Pendleton failed to preserve this issue at trial, we again review only for obvious error.

[¶12] A defendant has a right to be present in the courtroom at every stage of trial. N.D. Const. art I, § 12; N.D.R.Crim.P. 43(a)(1)(B). However, the rule permits the court to proceed without the defendant present if "[t]he proceeding involves only a conference or hearing on a question of law." N.D.R.Crim.P. 43(b)(3). Because the right to be present at trial is a constitutional right, "the State must establish a violation of the defendant's right to be present was 'harmless beyond a reasonable doubt.'" *See State v. Curtis*, 2009 ND 34, ¶ 28, 763 N.W.2d 443. If it would be unreasonable to conclude the defendant's absence had any effect on the proceedings or the result, such an error is harmless and does not warrant a reversal. *Id.* at ¶ 31. (citing *State v. Zimmerman*, 524 N.W.2d 111, 117 (N.D. 1994)).

[¶13] Pendleton's presence was not required at the portions of the trial he complains of on appeal. As indicated above, the conferences he takes issue with involved discussions about routine administrative matters. The in-chamber conferences and sidebars that occurred outside of the defendant's presence did not involve resolution of disputed facts, but instead involved logistical, procedural, and housekeeping matters. Furthermore, Pendleton's presence was also not required at the initial review of the jury verdict forms. As the record demonstrates, this conference with the judge, attorneys, and clerk was conducted to ensure the jury verdict was accurately filled out and to provide direction to the clerk in reading the verdicts. Because this was a ministerial matter, his presence was not required. The record demonstrates that after this brief conference concluded, the court returned the verdict in the courtroom, in the defendant's presence.

[¶14] Additionally, regarding the dismissal of Juror 61, the record is unclear whether the defendant was present when the court excused the juror. The record indicates that the attorneys were present when Juror 61 approached the court and indicated she had a dying family member; however, the record does not mention whether the defendant was also present. However, even if the defendant was not present for the juror's dismissal, the circumstances found in *City of Mandan v. Baer*, 1998 ND 101, 578 N.W.2d 559, are not present in this case to warrant a reversal. In *Baer*, this Court reversed a criminal conviction where the defendant and his counsel were absent when the court excused a prospective juror during jury selection. *Id*. at ¶¶ 8, 13. In dismissing the juror, the court did so under a mistaken view of the law that convicted felons were disqualified from serving on a jury. *Id*. at ¶ 14. Lastly, defense counsel objected to the court's dismissal, indicating the defense wished to see that juror remain on the panel. *Id*. at ¶ 4. Here, unlike *Baer*, Juror 61 was not dismissed because of an erroneous view of the law. Instead, the court excused Juror 61 after she asked to care for a dying family member. Also, defense counsel did not object to her excusal once the court went back on the record. Therefore, unlike *Baer*, there is no indication the defense wanted Juror 61 to remain on the panel. Although jury selection is a stage of the trial requiring Pendleton's presence, assuming he was absent during Juror 61's dismissal, it did not have any effect on the proceedings or the result. Assuming Pendleton

6

was absent during the juror's dismissal, we discern no possibility of prejudice to the outcome of this case, and we therefore conclude any error was harmless beyond a reasonable doubt.

IV

[¶15] Pendleton also argues he was charged with a non-cognizable offense, attempted knowing murder. Pendleton failed to preserve this issue at the trial. On appeal, he argues this was an obvious error requiring reversal.

[¶16] Attempted "knowing" murder is a non-cognizable offense. *Pemberton v. State*, 2021 ND 85, ¶ 13, 959 N.W.2d 891. Further, this Court has emphasized that it "cannot imagine a greater error affecting a defendant's substantial rights than when a defendant is convicted of conduct that is not a criminal offense under our law." *State v. Borner*, 2013 ND 141, ¶ 25, 836 N.W.2d 383. Because "[t]he failure to exercise our discretion in [a] case [where the defendant is convicted of a non-cognizable offense] would seriously affect the fairness, integrity, and public reputation of criminal jury trials," this Court exercises its discretion to correct such an error. *Id.*

[¶17] Pendleton was charged with three counts of attempted murder. The information used both the "intentionally" and "knowingly" culpability terms in the attempted murder charges. The opening jury instructions also used the "knowingly" term. However, the instructions were then amended for the closing charge to the jury. The amended instructions given to the jury for deliberations on the attempted murder counts stated the following:

> The State's burden of proof is satisfied if the evidence shows beyond a reasonable doubt, the following essential elements:
> 1. On or about May 27, 2020, in Grand Forks, North Dakota;
> 2. The defendant, Salamah Qareed Pendleton;
> 3. Intentionally;
> 4. Engaged in the conduct which constitutes a substantial step toward commission of the crime of murder;
> 5. Specifically, the defendant attempted to kill [victim's name]; and
> 6. The Defendant did not act in self-defense.

The instructions included a warning that these instructions modified and superseded the prior opening instructions.

[¶18] We conclude the jury instructions informed the jury of the level of culpability necessary to convict Pendleton on the attempted murder charges. "We consider the jury instructions as a whole, and determine whether they correctly and adequately inform the jury of the applicable law, even though part of the instructions when standing alone may be insufficient or erroneous." *State v. Estrada*, 2013 ND 79, ¶ 14, 830 N.W.2d 617. Here, the "intentionally" language in element three directly modifies element four, describing the charged conduct. The use of the word "specifically" in element five explains that element five is a further articulation or refinement of element four. Therefore, when reading the jury instructions as a whole, we conclude the instructions fairly advised the jury that they could convict Pendleton on nothing less than intentional attempted murder. Further, although the opening instructions stated the word "knowingly," the final instructions clearly provided that the instructions replaced and superseded the opening instructions. Thus, we affirm the attempted murder convictions.

V

[¶19] Pendleton argues juror misconduct occurred at trial because "one juror was reviewing the notes of another juror." Because the court put Pendleton on notice of the misconduct and Pendleton did not object, we review this issue for obvious error. *State v. Thomas*, 2019 ND 194, ¶ 11, 931 N.W.2d 192 ("If juror misconduct is noticed and the criminal defendant does not object or request a mistrial, reversal requires obvious error."). This Court exercises its "power to consider obvious error cautiously and only in exceptional situations where the defendant has suffered serious injustice." *State v. Wangstad*, 2018 ND 217, ¶ 14, 917 N.W.2d 515. "When analyzing obvious error, we examine the entire record for the probable effect of the alleged error in light of all the evidence." *Id.*

[¶20] The alleged misconduct was as follows:

THE COURT: It's 10:34. The attorneys have returned, Mr. Pendleton is back. The bailiffs did raise a question to me that we're going to address before we bring the jury in. Apparently one of the jurors had looked at the notes of one of the other people, looked at their tablet, or whatever. Either one of you two want to address that juror before we continue? Ms. Mattison?

MS. MATTISON: I don't think so, Judge, no.

THE COURT: Mr. Mottinger?

MR. MOTTINGER: I don't think so.

[¶21] The court then gave the following instructions to the jury regarding the alleged misconduct:

THE COURT: Okay. Jury members, you're going to be together for quite some time through this case, and you're all different, folks. You probably didn't know each other from what I remember from voir dire and you'll end up learning that you have to respect each other's views and even their privacy in their thoughts, so when you take notes in this case, those notes are for you alone until you deliberate. You're not obligated to share those notes with each juror. Obviously, they are intended to pertain just to the case, and when it comes time for the 14 of you or the 12 of you at that time to discuss the case, that's when you can refer back to those notes and share what you want with somebody. So until then, just please respect each other.

[¶22] The misconduct did not result in the defendant suffering a serious injustice. The misconduct occurred on day four of the trial, which was 12 days prior to when deliberations began. Further, it was only one juror who read the notes of another juror. The record does not indicate that the juror had looked at the other juror's notes on more than one occasion. Lastly, the court admonished the jury quickly after learning of the misconduct. It appears the misconduct had very little impact on the jury's verdict, considering there was ample evidence in the record to support the guilty verdict. Therefore, the misconduct was not an exceptional situation that warrants this Court to exercise its discretion to correct the misconduct that occurred.

9

# VI

[¶23] Lastly, Pendleton argues the court should have applied the new, reduced penalty to his conviction for possession with intent to deliver marijuana. He requests that this Court "reverse and remand Count 9 to be sentenced as a class C felony."

[¶24] At the time of Pendleton's criminal conduct, possession with intent to deliver marijuana was a Class B felony. Before his trial and sentencing, the statute was amended to reduce the penalty to a Class C felony. 2021 N.D. Sess. Laws ch. 172, § 5; N.D.C.C. § 19-03.1-23(1)(c). The statute included an emergency clause, giving the amendment an effective date of May 3, 2021. 2021 N.D. Sess. Laws ch. 172, § 25. Pendleton was convicted in July of 2021.

[¶25] This Court has applied a narrow exception to the general rule that statutes are not retroactive unless expressly declared so by the Legislature when the statute in question involves an "ameliorating penal amendment to a criminal statute." *State v. Flatt*, 2007 ND 98, ¶10, 733 N.W.2d 608 (citing N.D.C.C. § 1-02-10 for the general rule). In *State v. Cummings*, 386 N.W.2d 468, 472 (N.D. 1986), this Court concluded that "unless otherwise indicated by the Legislature, an ameliorating amendment to a criminal statute is reflective of the Legislature's determination that the lesser punishment is the appropriate penalty for the offense." There, the defendant was charged with a DUI and DUS. *Id*. at 469. The criminal conduct occurred after the 1985 legislative amendments to the DUI and DUS statutes, but before the amendment became effective. *Id*. at 470. The amendment reduced the minimum mandatory punishment of fifteen days to four consecutive days of imprisonment. *Id*. at 470. The defendant pled guilty after the amendment became effective and was sentenced under the harsher pre-amendment law. *Id*. This Court overturned his sentence, reasoning "[t]here is a compelling inference that the 1985 Legislature, by reducing the mandatory minimum penalty . . . determined that the former penalty was too harsh and that the latter and *lighter punishment* was the appropriate penalty for violations of that statute." *Id*. at 472 (emphasis added). Further, this Court said that "nothing is gained by imposing a more severe punishment after the Legislature has determined that a *lighter penalty* is appropriate." *Id*. (emphasis added).

[¶26] The court erred in not applying the ameliorating penal amendment to Pendleton's conviction. Similar to the defendant in *Cummings*, Pendleton was sentenced under the harsher pre-amendment law despite having been convicted after the amendment had become effective. Because the Legislature reduced the penalty from a Class B felony to a Class C felony, there is a compelling inference it did so because it determined the former penalty was too harsh and the latter, lighter punishment was the appropriate penalty for violations of the statute. Thus, we apply the exception to the general rule for ameliorating penal legislation set forth in *Cummings*. *See also State v. Cook*, 2018 ND 100, ¶ 24, 910 N.W.2d 179; *State v. Flatt*, 2007 ND 98, 733 N.W.2d 608; *State v. Shafer-Imhoff*, 2001 ND 146, 632 N.W.2d 825. We reverse and remand for the district court to re-sentence Pendleton on Count 9.

## VII

[¶27] We affirm the criminal judgment on counts 1-8. We reverse the judgment on count 9 and remand with instructions for the district court to resentence Pendleton consistent with this opinion.

[¶28] Daniel J. Crothers, Acting C.J.
     Gerald W. VandeWalle
     Lisa Fair McEvers
     Jerod E. Tufte
     Douglas A. Bahr, D.J.

[¶29] The Honorable Douglas A. Bahr, District Judge, sitting in place of Jensen, C.J., disqualified.